# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK and THE BOARD OF EDUCATION FOR THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION and ELISABETH DEVOS, in her official capacity as the Secretary of Education, <br><br> *Defendants*, <br><br> FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION <br><br> [*Proposed*] *Intervenor-Defendant*. | Civil Action No. 1:20-cv-4260-JGK |

## MEMORANDUM IN SUPPORT OF FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION'S MOTION TO INTERVENE AS DEFENDANT

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
INTRODUCTION ...............................................................................................................1
BACKGROUND ................................................................................................................2
ARGUMENT ......................................................................................................................6
I.     FIRE is entitled to intervene as of right. ..............................................................6
II.    Alternatively, FIRE should be allowed to permissively intervene. ...................12
CONCLUSION..................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                      **Page**

*Brennan v. New York City Board of Education*, 260 F.3d 123 (2d Cir. 2001) ............................... 9

*Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992)..................................................... 8

*Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409 (S.D.N.Y. 1974)............................................................ 9

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014)...........................................................................11

*Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435 (N.D. Ill. 1996)...............6

*City of Chicago v. FEMA*, 660 F.3d 980 (7th Cir. 2011).................................................................12

*Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) ....................................................................................................10

*Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016) ........................................12

*Commonwealth of Pennsylvania v. President of the United States*,
    888 F.3d 52 (3d Cir. 2018)................................................................................................. 10, 11

*Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015) .................11, 12

*Davis v. Monroe County Board of Education*, 562 U.S. 629 (1999)...........................................2, 3

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008).....................................................................3

*Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640 (W.D. Wis. Mar. 28, 2020)...........13

*Disability Advocates, Inc. v. Paterson*, 2009 WL 4506301 (E.D.N.Y. Nov. 23, 2009) ................13

*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) .................................................................................9

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ..................................................................7

*In re Sierra Club*, 945 F.2d 776 (4th Cir. 1991).............................................................................10

*Kleissler v. United States Forest Service*, 157 F.3d 964 (3d Cir. 1998).........................................10

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) .....................................12, 13

*League of Women Voters v. Johnson*, 902 F.3d 572 (6th Cir. 2018) .............................................13

*McBean v. City of New York*, 2007 WL 473711 (S.D.N.Y. Feb. 13, 2007) ..................................13

*New York Public Interest Research Group, Inc. v. Regents of the University of New York*,
    516 F.2d 350 (2d Cir. 1975)........................................................................................................7, 9

*Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261 (2d Cir. 1984)......................................8

*Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85 (S.D.N.Y. 2018) .................................................12

*Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667 (1973)..................................................... 7

*Republic of the Philippines v. Abaya*, 312 F.R.D. 119 (S.D.N.Y. 2015).........................................6

*Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5 (D.D.C. 2007) ...................................................14

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553 (E.D. Va. 2018) ...................................12

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013)....................................................................................9

*Students & Parents for Privacy v. Department of Education*,
  2016 WL 3269001 (N.D. Ill. Jun. 15, 2016).............................................................................13

*Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991)..............................................................................8

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) .....................................................9

*United Guaranty Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*,
  819 F.2d 473 (4th Cir. 1987) ...................................................................................................10

*United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978)........................................12

*United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) .......................6, 9

*United States v. Local 683, Enterprise Ass'n*, 347 F. Supp 164 (S.D.N.Y. 1972) ........................12

*United States v. Yonkers Board of Education*, 801 F.2d 593 (2d Cir. 1986)..................................6

*Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir. 2016).......11

*Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990).........................................................................................................6

*Yang v. Kellner*, 2020 WL 2115412 (S.D.N.Y. May 3, 2020) ......................................................12

### Rules

Fed. R. Civ. P. 24(a) .........................................................................................................................6

Fed. R. Civ. P. 24(a)(2).................................................................................................................... 8

Fed. R. Civ. P. 24(b) ......................................................................................................................12

### Administrative Materials

85 Fed. Reg. 30,026, (May 19, 2020) ...................................................................................2, 3, 4, 9

### Other Authorities

Comment of the Foundation for Individual Rights in Education in Support of the Department
of Education's Proposed Regulations on Title IX Enforcement
(Jan. 30, 2019), https://bit.ly/2Nl6qss...................................................................................2, 3

U.S. Dep't of Educ., *Dear Colleague Letter: Harassment and Bullying* (Oct. 26, 2010),
https://bit.ly/2Bp3rg4................................................................................................................2

## INTRODUCTION

Plaintiffs ask this Court to throw out a Department of Education rule that was written to protect free speech and due process on college campuses. The Foundation for Individual Rights in Education ("FIRE") is one of America's largest and most prominent advocacy organizations dedicated to promoting free speech and due process at colleges and universities. FIRE seeks to intervene in this case to protect its interests and to advance a legal theory that the Department of Education will not: that many of the rule's protections for college students are not just reasonable policy decisions—they are *constitutionally required*. FIRE satisfies the requirements for both intervention as of right and permissive intervention, and it should be allowed to intervene to offer a perspective on the First and Fourteenth Amendments that will otherwise not be represented.[1]

## BACKGROUND

On May 6, 2020, the Department of Education announced that it would issue a final rule imposing certain legal obligations under Title IX on federal funding recipients—a category that includes virtually all colleges and universities in the United States. One of the Final Rule's key provisions is its definition of conduct that qualifies as the kind of "sexual harassment" that Title IX requires funding recipients to investigate and punish. Among other things, the Final Rule defines "sexual harassment" to include "[u]nwelcome conduct [as] determined by a reasonable person" that is "so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity." 85 Fed. Reg. 30,026, at 30,574 (May 19, 2020). This definition is drawn from the Supreme Court's decision in *Davis v. Monroe County*

---

[1] Counsel for FIRE consulted counsel for the parties concerning this motion. Plaintiffs oppose the motion, and Defendants indicated that they would take a position on the motion after it is filed.

*Board of Education*, 562 U.S. 629, 650 (1999), a case where a private plaintiff sued a funding recipient under Title IX for its deliberate indifference to peer sexual harassment.

The Final Rule's adoption of "the *Davis* standard" to define sexual harassment marks a departure from the Department's past guidance, which described the attributes of actionable sexual harassment in the disjunctive ("severe, pervasive, *or* objectively offensive") and said that conduct that is "persistent" qualifies as harassment (even if it is not objectively offensive). *See, e.g.*, U.S. Dep't of Educ., *Dear Colleague Letter: Harassment and Bullying* at 2 (Oct. 26, 2010), https://bit.ly/2Bp3rg4. One of Plaintiffs' principal prayers for relief is that the Court throw out the new rule's definition of "sexual harassment" because it differs from the broader and more subjective definition previously used by the Department. *See* Amended Complaint for Declaratory and Injunctive Relief at 92–97, Doc. 13 (June 18, 2020) ("Compl.").

Before the Final Rule was promulgated, FIRE submitted comments to the Department urging it to adopt the *Davis* standard because any broader definition of sexual harassment would violate the First Amendment. *See* Comment of the Foundation for Individual Rights in Education in Support of the Department of Education's Proposed Regulations on Title IX Enforcement (Jan. 30, 2019), https://bit.ly/2Nl6qss. *Davis* itself strongly supports this position. In response to First Amendment concerns raised by Justice Kennedy in dissent, the *Davis* majority took care to define the conduct that funding recipients must punish in a manner that allows public university administrators "to refrain from a form of disciplinary action that would expose [them] to constitutional . . . claims." 562 U.S. at 649. Since *Davis*, courts have looked to that decision for guidance on the scope of "sexual harassment" that public universities may prohibit consistent with the First Amendment. *See, e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 319 (3d Cir. 2008).

Despite adopting the *Davis* standard in part because it concluded that doing so would help to avoid "a chill on free speech and academic freedom," 85 Fed. Reg. at 30,142, the Department stops short of saying that the *Davis* standard is *required* by the First Amendment. That is an important point of disagreement between the Department and FIRE: while the Department purports to have selected one of a range of constitutionally permissible definitions of "sexual harassment," FIRE's position is that the Final Rule uses a definition that could not be made broader without violating the First Amendment. This disagreement between FIRE and the Department has direct implications for this case. If FIRE is correct, Plaintiffs' challenge to the Final Rule's use of the *Davis* standard must be rejected without regard to what Title IX and the Administrative Procedure Act ("APA") might otherwise require. In contrast, if the Department is correct, the lawfulness of the Final Rule's use of the *Davis* standard will depend on whether that standard is consistent with the federal statutes that provide the basis for Plaintiffs' suit.

A similar dynamic exists with another one of the Final Rule's major reforms: its enhanced due process protections for students accused of sexual misconduct. In its comment, FIRE urged the Department to adopt these protections, including notice of the allegations, a neutral decisionmaker, live hearings, and the right to cross-examination. The Department agreed. *See* 85 Fed. Reg. at 30,053–54. While the Department believes the Rule's protections are "inspired by principles of due process," the Department justifies the protections "independent of constitutional due process" and stresses that the protections "remain distinct from constitutional due process." *Id.* at 30,100–01. FIRE does not agree; as applied to Plaintiffs and their public schools, many of the Rule's safeguards are mandated by the Due Process Clause.

FIRE is a nonprofit membership organization with approximately 50 employees and a student network with student members on college campuses in New York and throughout the

United States. FIRE staff work directly with college students and faculty who are subjected to disciplinary proceedings for engaging in conduct that is protected by the First Amendment. In instances when a disciplinary proceeding threatens to chill unpopular but constitutionally protected speech, FIRE staff educate the accused of his or her rights and communicate with university administrators about their obligations under the Constitution. Considerable staff time and funds are devoted to these activities, and in recent years a significant share of these resources have been used to counter sexual misconduct proceedings at universities that provide few procedural protections for accused students and enforce conduct codes that use broad, amorphous definitions of prohibited "sexual harassment." If allowed to go into effect, the Final Rule's use of the *Davis* standard will reduce the frequency with which universities attempt to punish free speech on sensitive issues of gender and sex and thus allow FIRE to shift its resources to addressing other threats to protected speech on campus. FIRE does not have enough staff time or money to assist every student who approaches it for help, and the Final Rule's procedural protections and definition of sexual harassment will free up resources for use in other cases.

In addition to its involvement in individual disciplinary proceedings, FIRE also devotes considerable staff time and money to working with its Student Network members to educate college students about their free speech and due process rights. Members of FIRE's Student Network work to promote their own rights as well as the rights of other college students through public messaging about the constitutional limits on the authority of public universities to punish speech and how they may go about doing so, including speech on gender, sex, and other controversial topics that are sometimes the basis for discipline under university conduct codes that prohibit "sexual harassment." FIRE also spends money preparing printed materials on these issues for distribution on college campuses. If the Final Rule's procedural protections and its definition

of "sexual harassment" are permitted to go into effect, FIRE and its student members will be able to shift these resources and efforts to promoting free speech and due process in other contexts.

At least one member of the FIRE Student Network is a student at a public university who is currently the subject of an enforcement proceeding for alleged sexual misconduct. This student's case involves a factual dispute, no hearing on the matter has yet been scheduled, and the accused student wants the benefit of the additional procedural protections the Final Rule would provide. Fewer procedural safeguards will apply to this case if it is adjudicated under existing university policy rather than in the manner that would be required under the Final Rule. This member of FIRE's Student Network thus stands to lose important procedural protections if the Court enjoins enforcement of the Final Rule, even temporarily. In addition to the specific FIRE Student Network member just described, FIRE has other student members who have been, are, or could be subject to Title IX disciplinary proceedings.

**ARGUMENT**

**I.  FIRE is entitled to intervene as of right.**

Under Rule 24(a), a court "must permit anyone to intervene who" (1) makes a timely motion to intervene, (2) has an "interest relating to the property or transaction that is the subject of the action," (3) is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) shows that he or she is not "adequately represent[ed]" by "existing parties." FED. R. CIV. P. 24(a). The Second Circuit takes a flexible approach when applying this standard, with a strong showing as to some of the requirements making intervention as of right appropriate even if the proposed intervenor's showing is weaker as to others. *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984). All of Rule 24(a)'s requirements are satisfied here.

*First*, FIRE has timely filed this motion. This case was filed on June 4, and Plaintiffs amended their complaint on June 18. A briefing schedule for Plaintiffs' preliminary injunction motion has not yet been set, and if permitted to intervene FIRE will abide by any schedule this Court establishes. With this case less than a month old and the Court having entered no substantive rulings, there is no doubt that this motion is timely. *See United States v. Yonkers Board of Education*, 801 F.2d 593, 595 (2d Cir. 1986); *Republic of the Philippines v. Abaya*, 312 F.R.D. 119, 123 (S.D.N.Y. 2015).

*Second*, FIRE has a "direct, substantial, and legally protectable" interest in the subject of this action. *Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). As the description of FIRE's activities provided above makes clear, FIRE has an interest in this case that is the "mirror-image" of Plaintiffs' interest. *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 440–41 (N.D. Ill. 1996). Plaintiffs claim they "are being injured by the [Final Rule]," and FIRE claims that it "will be injured by its invalidation." *Id.* at 440. While Plaintiffs allege that the Final Rule will force them to divert resources from other unrelated programs, *see* Compl. ¶ 14, the inverse is true for FIRE; the Final Rule will allow FIRE to reallocate resources to other activities that would otherwise be used to resist unconstitutional disciplinary proceedings. If Plaintiffs have Article III standing to challenge the Final Rule on a diversion-of-resources theory, *see Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), then it necessarily follows that FIRE has a significantly protectable interest in defending it, *see New York Public Interest Research Group, Inc. v. Regents of the University of New York*, 516 F.2d 350, 352 (2d Cir. 1975).

Wholly apart from the staff time and money that FIRE will save if the Final Rule is permitted to go into effect, FIRE has a second significantly protectable interest in this action:

6

safeguarding the free speech and due process rights of its members. As described above, a member of the FIRE Student Network is currently in disciplinary proceedings at a public university and desires to receive the benefit of the Final Rule's procedural protections. Moreover, many other FIRE members have been, are, or will be subject to similar disciplinary proceedings. Disciplinary proceedings without notice of the charges, adjudication by a neutral decisionmaker, cross-examination, and other basic protections are fundamentally unfair and risk erroneous decisions with life-altering consequences for students. And expansive definitions of "sexual harassment" in university conduct codes have a chilling effect on speech concerning gender, sex, and related topics, and even speech on these subjects that many find offensive is valuable and protected by the First Amendment. *See Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973) ("[T]he mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'"). As FIRE's members prepare to return to campus and navigate pending Title IX hearings and draconian "harassment" codes, this case directly threatens their constitutional rights. Those rights qualify as an "interest" under Rule 24(a)(2). *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1125 (3d Cir. 1992).

*Third*, FIRE's significant interests and its ability to protect those interests may be impaired "as a practical matter" by this action. FED. R. CIV. P. 24(a)(2). It is a premise of Plaintiffs' lawsuit that the Final Rule's definition of "sexual harassment" will significantly narrow the types of speech and expressive conduct that universities prohibit and punish. Plaintiffs also complain that the Rule's procedural protections for the accused will make it harder for them to punish students. If these premises are correct—as they must be for Plaintiffs' injuries to be fairly traceable to the rule they seek to challenge—then FIRE "stand[s] to gain or lose by the direct legal operation" of this

Court's ruling. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). For the same reasons that Plaintiffs stand to gain from a decision in their favor, FIRE stands to lose.

Moreover, FIRE's interests will be affected not only by whether this Court upholds the Final Rule but also on what grounds. The Department has not been consistent over time in its position on the definition of "sexual harassment" for purposes of Title IX, or on the procedures that universities must afford the accused in disciplinary proceedings. If the Court considers and accepts FIRE's constitutional arguments, it will establish that the Department *cannot* revert to the definitions and policies it has used in the past. If, on the other hand, the Court upholds the Final Rule as one of a range of approaches that are permissible under Title IX, the Department could in the future abandon its current positions. Accordingly, the potential stare decisis effects of this Court's decision provide a basis for intervention as of right here. *See Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265-66 (2d Cir. 1984).

Participating in this case as an amicus would not enable FIRE to adequately protect its interests in this case. This Court would not be required to consider FIRE's constitutional arguments if they were presented only in an amicus brief, and FIRE could not file motions or appeal from an adverse judgment. In short, intervention is necessary for FIRE to safeguard its significant interests in this case. *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) ("Participation by the intervenors as amicus curiae is not sufficient to protect against these practical impairments. Amicus participants are not able to make motions or to appeal the final judgment in the case."); *Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409, 414–15 (S.D.N.Y. 1974).

*Fourth*, FIRE's interests are not adequately represented by the existing parties. "The requirement of [inadequate representation] is satisfied if the applicant shows that representation of his interest *may* be inadequate; and the burden of making that showing should be treated as

8

minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added; quotation marks omitted). This standard is satisfied, for example, when interests are similar but are not congruent, *see Brennan v. New York City Board of Education*, 260 F.3d 123, 132–33 (2d Cir. 2001), or where intervenors may make a "more vigorous presentation" of a part of the argument, *New York Public Interest Research Group, Inc.*, 516 F.2d at 352. FIRE clears this low hurdle.[2]

FIRE's interests differ from those of the Department. In issuing the Final Rule, the Department explicitly sought to "balance protection from sexual harassment with protection of freedom of speech and expression." 85 Fed. Reg. at 30,165. FIRE, in contrast, represents interests on one side of those scales: the free speech and due process rights of university students and faculty. This case is therefore indistinguishable from *In re Sierra Club*, 945 F.2d 776 (4th Cir. 1991), where the Fourth Circuit held that South Carolina did not adequately represent the Sierra Club because the state was responsible for representing economic as well as environmental interests. As the Fourth Circuit has explained, "when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene." *United Guaranty Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987); *see also Kleissler v. United States Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998); *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996).

---

[2] Although a stronger showing of inadequate representation is sometimes required when the proposed intervenor is aligned with a governmental litigant, no such presumption applies where, as here, the government's interests and those of the proposed intervenor diverge. *See Hooker Chemicals & Plastics Corp.*, 749 F.2d at 985; *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). Even if the presumption applied, it would be overcome in this case for the reasons given in the text.

The conclusion that FIRE is not adequately represented follows from the Supreme Court's decision in *Trbovich*. In that case, the Secretary of Labor instituted an action to set aside an election of officers of the United Mine Workers of America. The union member whose complaint led the Secretary to sue sought to intervene in the action. The district court denied his motion to intervene and the court of appeals affirmed, but the Supreme Court reversed. The Court reasoned that, while the Secretary of Labor was charged with representing the union member's interest in the litigation, it also was charged with protecting the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Trbovich*, 404 U.S. at 539. Because of the presence of this additional interest and its potential to affect the Secretary's approach to the litigation, it was "clear" to the Court "that in this case there is sufficient doubt about the adequacy of representation to warrant intervention." *Id*. at 538.

The Third Circuit's decision in *Commonwealth of Pennsylvania v. President of the United States*, 888 F.3d 52 (3d Cir. 2018), is also instructive. In that case, the Little Sisters of the Poor, a group of Catholic nuns, sought to intervene to defend provisions of a Department of Health and Human Services rule that created a religious exemption to the Affordable Care Act's contraceptive mandate. The district court denied the Little Sisters' motion to intervene as of right on the grounds that they were adequately represented by the agency, but the Third Circuit reversed. In so ruling, the Third Circuit explained that the agency was tasked with "serving two related interests that are not identical: accommodating the free exercise rights of religious objectors while protecting the broader public interest in access to contraceptive methods and services." *Id.* at 61. Because the agency was charged with balancing the Little Sisters' interest against other, competing interests that were also at stake in the litigation, the agency could not adequately represent the Little Sisters. The same is true here.

Moreover, the divergence of interests between the Department and FIRE has direct consequences for the kinds of arguments each will make. In addition to its immediate interest in defending the Final Rule, the Department has a long-term interest in preserving the scope of its discretion to issue rules under Title IX. Consistent with that interest, which FIRE does not share, the Department has been careful not to say that the First Amendment required it to use the *Davis* standard in its definition of "sexual harassment," or that the Due Process Clause required it to adopt any of the procedural protections in the Final Rule. Where, as here, proposed intervenors seek to make "real and legitimate additional or contrary arguments" to those of the existing litigants, that fact "is sufficient to demonstrate that the representation may be inadequate." *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014).

Relatedly, because the Department's focus is on defending the Final Rule, it "merely seeks to defend the present suit and would accept a procedural victory." *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016). FIRE, by contrast, wants a definitive ruling that accepts its constitutional arguments and binds future Departments. *See, e.g.*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (finding the federal government an inadequate representative of the movant's interests because the government planned to raise a procedural standing argument).

## II.     Alternatively, FIRE should be allowed to permissively intervene.

This Court has repeatedly said that Rule 24(b) "is to be liberally construed." *Yang v. Kellner*, 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) (quoting *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018)). Unlike Rule 24(a)(2), Rule 24(b) does not ask whether the movant has an interest at stake in the litigation. *See United States v. Local 683, Enterprise Ass'n*, 347 F. Supp 164, 166 (S.D.N.Y. 1972). And Rule 24(b) does not ask whether the existing parties adequately represent the movant's interests. *See Coleman v. Cty. of Suffolk*, 174 F. Supp.

11

3d 747, 754 (E.D.N.Y. 2016), *aff'd*, 685 Fed. App'x 69 (2d Cir. 2017). Instead, "Rule 24(b) is just about economy in litigation." *City of Chicago v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011). Specifically, it asks whether the motion is "timely," whether intervention will "unduly delay or prejudice" the parties, and whether the movant's defense "shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). The principal consideration is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *United States Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978).

The requirements for permissive intervention are satisfied here. As explained, FIRE filed its motion in a timely fashion. And its defenses—which "squarely respond" to Plaintiffs' claims—obviously share common questions with the main action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002). Nor will intervention cause any undue delay or prejudice. "Rule 24(b) mentions only *undue* delay; normal delay does not require denying intervention, because adding parties to a case almost always results in some delay." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 561 (E.D. Va. 2018). Yet FIRE will not slow this case down at all, since it will follow whatever briefing schedule governs Defendants. *See Disability Advocates, Inc. v. Paterson*, 2009 WL 4506301, at *2 (E.D.N.Y. Nov. 23, 2009).

Allowing FIRE to permissively intervene will have other benefits as well. For one, FIRE's participation will conserve judicial resources by reducing the need for "burdensome, as well as inefficient" separate cases. *McBean v. City of New York*, 2007 WL 473711, at *3 (S.D.N.Y. Feb. 13, 2007). Before the Final Rule, FIRE regularly challenged universities' harassment policies in court. But if the Final Rule is upheld—particularly on the constitutional grounds that FIRE plans to press—then many of these lawsuits can be avoided. Most universities accept federal funds, and most universities will adopt the definition of actionable harassment adopted by the Final Rule.

Because that definition complies with the First Amendment, FIRE can reduce the number of lawsuits it files—conserving substantial resources for the judicial system as a whole. *Students & Parents for Privacy v. Department of Education*, 2016 WL 3269001, at *3 (N.D. Ill. Jun. 15, 2016).

Moreover, "the magnitude of this case is such that [FIRE's] intervention will contribute to the equitable resolution of this case." *Kootenai Tribe*, 313 F.3d at 1111. The outcome of this case will affect "large and varied interests" but, without FIRE's intervention, important perspectives will be missing. *Id.* For example, only FIRE represents the college students who "directly" benefit from the Rule's protections for free speech and due process. *League of Women Voters v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018). And as an advocacy organization that *supports* the Final Rule, FIRE represents "the 'mirror-image' " of many of the interests that Plaintiffs seek to vindicate and is thus "uniquely qualified" to permissively intervene. *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (internal quotation marks omitted).

FIRE also has a wealth of experience and expertise that it can bring to bear on the historical, factual, and legal questions in this case—questions that FIRE has been actively studying, discussing, promoting, and litigating for years. As a thought leader and repeat player in this field, FIRE's participation as a party will meaningfully assist the Court. *See, e.g.*, *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007). FIRE has unique perspectives, unique expertise, unique interests, and unique constitutional arguments. This Court should exercise its discretion to allow FIRE to permissively intervene.

## CONCLUSION

The Court should grant FIRE's motion to intervene and allow it to participate in this case as a defendant.

Dated: June 29, 2020                    Respectfully submitted,

   /s/  *Charles J. Cooper*

Charles J. Cooper (*pro hac vice* motion pending)
Brian W. Barnes (*pro hac vice* motion forthcoming)
Nicole J. Moss (*pro hac vice* motion forthcoming)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
ccooper@cooperkirk.com
bbarnes@cooperkirk.com
nmoss@cooperkirk.com

*Counsel for Foundation for
Individual Rights in Education*

## CERTIFICATE OF WORD COUNT

Pursuant to Judge Koeltl's Individual Rules of Practice II.D, the undersigned counsel hereby certifies that the foregoing Memorandum complies with the formatting requirements in Rule II.D and the Memorandum, including body, headings, and footnotes, contains 4,296 words as measured by Microsoft Word.

/s/Charles J. Cooper
Charles J. Cooper

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that such filing will accomplish service upon counsel of record in this case.

s/Charles J. Cooper
Charles J. Cooper*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Pro Hac Vice application pending

*Attorney for Proposed Intervenor-Defendant*
