IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK and THE BOARD OF EDUCATION FOR THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,<br><br>       *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and ELISABETH DEVOS, in her official capacity as the Secretary of Education,<br><br>       *Defendants*,<br><br>FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION<br><br>  [*Proposed*] *Intervenor-Defendant*. | Civil Action No. 1:20-cv-4260-JGK |

**FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION'S
REPLY IN SUPPORT OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

I.  FIRE's constitutional arguments are directly relevant to issues already before the Court. ...........................................................................................................1

II. FIRE is entitled to intervene as of right under Rule 24(a). ...........................................4

III. The Court should permit FIRE to permissively intervene under Rule 24(b). ...............7

CONCLUSION .........................................................................................................................9

## **TABLE OF AUTHORITIES**

**Case**                                                                                                                          **Page**

*Black v. LaHood*, 882 F. Supp. 2d 98 (D.D.C. 2012)...............................................................2

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ....................................4

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ..........................................................................3

*Commonwealth of Pennsylvania v. President of the United States*,
   888 F.3d 52 (3d Cir. 2018).....................................................................................................6

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) ....................................................................................................7

*Covenant Media of S.C., LLC v. City of N. Charleston*,
   493 F.3d 421 (4th Cir. 2007) .................................................................................................2

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
   172 F.3d 104 (1st Cir. 1999) ..................................................................................................7

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*,
   485 U.S. 568 (1988)............................................................................................................... 3

*Fla. Family Policy Council v. Freeman*, 561 F.3d 1246 (11th Cir. 2009) ..................................2

*Herdman v. Town of Angelica*, 163 F.R.D. 180 (W.D.N.Y. 1995).......................................6

*In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991)..................................................................6

*League of Women Voters of Mich. v. Johnson*, 902 F.3d 572 (6th Cir. 2018)................................8

*McIntire v. Mariano*, 2019 WL 78982 (S.D. Fla. Jan. 2, 2019) ....................................................7

*Me-Wuk Indian Community v. Kempthorne*, 246 F.R.D. 315 (D.D.C. 2007)..............................1

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984)..........................................................................4

*Mizrahi v. Gonzales*, 492 F.3d 156 (2d Cir. 2007) .....................................................................3

*New York v. United States Dep't of Health & Human Servs.*, 2019 WL 3531960
   (S.D.N.Y. Aug. 2, 2019) .......................................................................................................1

*SEC v. Goldstone*, 2013 WL 6920854 (D.N.M. Dec. 13, 2013)...................................................7

*Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142 (D.D.C. 2011).....................................4

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*,
   531 U.S. 159 (2001)...............................................................................................................3

*Texas v. United States*, 2018 WL 10562846 (N.D. Tex. May 16, 2018)...................................8, 9

*United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984)............................5

*United States v. Philip Morris USA Inc.*, 2005 WL 1830815 (D.D.C. July 22, 2005) ...................8

*Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246 (10th Cir. 2001)...............................................6, 7

*White v. United States*, 601 F.3d 545 (6th Cir. 2010).................................................................2

**Rules**

FED. R. CIV. P. 24(a) ...........................................................................................................4, 5
FED. R. CIV. P. 24(b) .............................................................................................................7
FED. R. CIV. P. 24(b)(1)(B) ................................................................................................7, 8

It is understandable that Plaintiffs would prefer not to respond to the merits of FIRE's constitutional arguments. But FIRE's perspective is crucial because it affects the answer to every key question before the Court. If the Final Rule's free speech and due process protections are constitutionally *required*, then Plaintiffs lack standing to challenge them, Plaintiffs' APA challenges lack merit at *Chevron* Steps One and Two, and the equities tip decidedly against a preliminary injunction. Plaintiffs disagree with FIRE's constitutional arguments, as their opposition makes clear. But that is a debate to be had on the merits—not a reason to bar FIRE from intervening in the first place.

FIRE is entitled to intervene in this case under Rule 24(a). Plaintiffs do not dispute that FIRE's intervention motion is timely and that FIRE has an interest in this action, and Plaintiffs' arguments with respect to the other requirements for intervention as of right are unpersuasive. FIRE should also be permitted to permissively intervene. FIRE brings a wealth of expertise on the issues in this case, offers a constitutional perspective that the existing parties will not, and will be the *only* voice for the college students who will lose vital protections if the Final Rule is vacated.

## ARGUMENT

**I.    FIRE's constitutional arguments are directly relevant to issues already before the Court.**

Plaintiffs accuse FIRE of improperly seeking to inject new *claims* into the case, but in fact FIRE seeks only to introduce *arguments* that no one else will make on issues that are already before the Court. Although Plaintiffs elide this distinction, it is critical to the resolution of FIRE's motion; those with a concrete interest in a case who seek to make new arguments on issues the Court must decide are the archetypal third parties who are allowed to intervene under Rule 24. *See New York v. United States Dep't of Health & Human Servs.*, 2019 WL 3531960, at *7 (S.D.N.Y. Aug. 2, 2019); *Me-Wuk Indian Community v. Kempthorne*, 246 F.R.D. 315, 321 (D.D.C. 2007).

1

The Court should not blind itself to FIRE's constitutional arguments, which speak directly to issues Plaintiffs have already put before the Court. Consider, for example, the implications of FIRE's arguments for Plaintiffs' preliminary injunction motion.

**Standing.** Plaintiffs do not have standing to complain that the Final Rule forces them to do things that the Constitution requires them to do anyway. Thus, if FIRE is correct that the Final Rule's definition of sexual harassment and many of its procedural protections simply enforce the requirements of the First Amendment and the Due Process Clause, Plaintiffs do not have standing to challenge these key aspects of the Final Rule.

A long line of cases shows that, if FIRE's constitutional claims have merit, then many of Plaintiffs' claims must be dismissed for lack of redressability. In *Black v. LaHood*, 882 F. Supp. 2d 98, 106 (D.D.C. 2012), for example, the court dismissed a challenge to a federal trail project that permanently closed a road to automobile traffic. The plaintiffs' injuries from the federal project were not redressable, the Court explained, because a separate D.C. Council ordinance also prohibited drivers from using the road. *Id.* Many other cases reach the same result. *See, e.g.*, *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (economic injuries caused by federal prohibition on cockfighting not redressable because cockfighting is also illegal under state law); *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1256–58 (11th Cir. 2009) (injuries caused by canon of judicial conduct requiring disqualification were not redressable because unchallenged state statute also required disqualification); *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007) (billboard company lacked redressable injury from local ordinance challenged under the First Amendment because it could not place sign at desired location under separate, unchallenged ordinance).

If this Court allows FIRE to intervene, it will argue that the First Amendment and the Due Process Clause place significant constraints on whether and how Plaintiffs may lawfully punish speech on college campuses. An order from this Court vacating the Final Rule would not relieve Plaintiffs from those constitutional obligations, which all public colleges and universities must follow. It follows that many of Plaintiffs' alleged injuries are not redressable.

**Likelihood of Success on the Merits.** One of the centerpieces of Plaintiffs' lawsuit is their claim that key aspects of the Final Rule are inconsistent with Title IX and therefore "contrary to law" under the APA. *See* Am. Compl., Doc. 13, ¶¶ 290–305 (June 18, 2020). To assess this claim, the Court will apply *Chevron*'s two-step framework. At Step One, the Court will "consider *de novo* whether Congress has clearly spoken to the question at issue." *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007). In undertaking this inquiry, the Court will not be limited to the statutory interpretation arguments offered by the agency in its Final Rule but instead must deploy "the ordinary tools of statutory construction," *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013), including the canon of constitutional avoidance. If FIRE is correct that Plaintiffs' proposed construction of Title IX would cause this important statute to run afoul of the First Amendment and the Due Process Clause, that is a powerful reason for this Court to conclude that Title IX does not unambiguously mean what Plaintiffs say. *See, e.g.*, *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–72 (2001) (applying constitutional avoidance canon at *Chevron* Step One); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 574–75 (1988) (same). FIRE's constitutional arguments will also provide important context for assessing the reasonableness of the Department's interpretation of the statute at *Chevron* Step Two. Although the Department did not embrace FIRE's constitutional arguments,

it gave weight to free speech and due process considerations when promulgating the Final Rule—and it was right to do so if FIRE's constitutional arguments have merit.

**Irreparable Injury.** For much the same reason that FIRE's constitutional arguments show that Plaintiffs' injuries are not redressable, they also establish that Plaintiffs will not sustain any irreparable injury if the Final Rule goes into effect as scheduled on August 14. As a matter of law, Plaintiffs cannot sustain an irreparable injury from being required to comply with provisions of a federal regulation that do no more than require them to comply with the Constitution. Although courts often speak of whether a plaintiff who seeks a preliminary injunction will sustain irreparable injury "without" injunctive relief, it is "more accurate to phrase the question . . . as whether the plaintiff will suffer irreparable harm 'but for' the issuance of an injunction." *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) (citing *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)). The inquiry is "whether the plaintiff has shown that the relief sought will actually prevent irreparable harm," *id.*, and Plaintiffs would not avoid any irreparable injury by being relieved of obligations under the Final Rule that overlap with their obligations under the Constitution.

**Balance of Hardships and the Public Interest.** Whether and when the Final Rule goes into effect is enormously important to the students whose constitutional rights the rule protects. The public interest favors the protection of constitutional rights. *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984). If the Court is persuaded by FIRE's constitutional arguments, it will have a strong reason to deny a preliminary injunction. For this reason as well, FIRE's constitutional arguments are directly relevant to the issues already before the Court. They ought to be heard.

## II.   FIRE is entitled to intervene as of right under Rule 24(a).

Rule 24(a) specifies four requirements for intervention as of right, and Plaintiffs do not contest that FIRE satisfies two of them: timeliness and an interest in the action. *See* FED. R. CIV.

4

P. 24(a). Plaintiffs' silence as to those two factors is significant because, as FIRE's opening brief explained and Plaintiffs do not dispute, the Second Circuit applies a sliding scale when deciding whether Rule 24(a)'s requirements are satisfied, with a stronger showing as to some of the requirements making up for a weaker showing as to others. *See* Br. in Support of Mot. to Intervene, Doc. 25 at 5 (June 29, 2020) ("Intervention Br.").

"A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation," *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984), and FIRE has made such a showing here. Specifically, if Plaintiffs are granted the nationwide injunction they seek, this will force FIRE to expend substantial resources providing services to university students who are accused of sexual misconduct under speech codes that provide meager procedural protections and use vague and subjective definitions of "sexual harassment." In addition to FIRE's own interest in those resources, it also seeks to intervene on behalf of its members—*one of whom is subject to an investigation for alleged sexual misconduct at a public university right now*. *See* Intervention Br. 5. That student has an acute interest in whether he will be afforded the additional procedural protections that the Final Rule guarantees, and all of FIRE's Student Network members have a strong interest in seeing that their free speech and due process rights are protected. Plaintiffs do not and cannot dispute that FIRE and its members have an extremely significant interest in the outcome of this litigation, and that is a compelling reason to grant the motion.

Plaintiffs contend that FIRE's interests could not be impaired by the outcome of this case, but in making this argument Plaintiffs confuse FIRE's *interests* with the *unique arguments* that FIRE proposes to advance. The fact that FIRE would assert constitutional arguments that no one else will make is highly relevant to whether FIRE is adequately represented, but FIRE's unique

arguments do not define the metes and bounds of its interests in this action. FIRE's interests will be impaired if this Court throws out the Final Rule because enforcement of the rule would free up substantial resources that FIRE could use to advance other aspects of its mission. Invalidation of the Final Rule would also imperil the free speech and academic freedom of FIRE's members while stripping procedural protections from at least one FIRE Student Network member who currently stands accused of sexual misconduct. FIRE's interests in this case are not limited to seeking to have its constitutional theories vindicated, and Plaintiffs' argument misses the mark because it assumes otherwise.

Plaintiffs also contend that FIRE's interests are adequately represented by Defendants since FIRE and Defendants share the common goal of persuading the Court to uphold the Final Rule. But that was also the situation in *Commonwealth of Pennsylvania v. President of the United States*, 888 F.3d 52 (3d Cir. 2018), and *In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991)—cases cited in FIRE's opening brief that Plaintiffs ignore. The rule is that a proposed intervenor is not adequately represented by a governmental party when its interests diverge from those of the government, even when the proposed intervenor and the government both want the court to uphold a challenged government policy. That is precisely the situation here. Defendants are statutorily charged with balancing competing interests. FIRE, in contrast, represents solely the free speech and due process interest of university students and faculty. For that reason, the presumption of adequate representation by government litigants does not apply. *See Herdman v. Town of Angelica*, 163 F.R.D. 180, 190 (W.D.N.Y. 1995).

Finally, it is telling that the Department of Justice has taken no position on FIRE's motion to intervene as of right. When governmental defendants "take[] no position on the motion to intervene," courts typically grant intervention because the government's "silence on any intent to

6

defend the intervenors' special interests is deafening." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (cleaned up); *accord Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (same). Indeed, FIRE knows of no case denying intervention where the movant wanted to litigate alongside the government and the government did not object.

**III.     The Court should permit FIRE to permissively intervene under Rule 24(b).**

Granting permissive intervention is the simplest way to resolve this motion. Permissive intervention is entirely discretionary. *See SEC v. Goldstone*, 2013 WL 6920854, at *24 (D.N.M. Dec. 13, 2013) ("'The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal.'" (quoting *Moore's Federal Practice*)). When exercising its "'very broad discretion,'" this Court can grant permissive intervention based on "'almost any factor rationally relevant.'" *McIntire v. Mariano*, 2019 WL 78982, at *7 (S.D. Fla. Jan. 2, 2019) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999)). The only factors that Rule 24(b) requires this Court to consider are timeliness, the presence of a common question of law or fact, and undue delay or prejudice. *See* FED. R. CIV. P. 24(b).

Those factors strongly favor intervention. Plaintiffs do not dispute timeliness. And Plaintiffs' attempt to argue that FIRE's defenses do not share common questions of law with the main action, Pls.' Mem. of Law in Opp. to Mot. to Intervene as Def. by FIRE, Doc 31 at 7–8 (July 2, 2020) ("Opp."), is confused. FIRE shares *every* question of law and fact with the main action because, like Defendants, FIRE seeks to defend the Final Rule. While FIRE proposes to raise additional constitutional defenses that Defendants will not, those additional defenses do not defeat permissive intervention. Rule 24(b) requires FIRE to identify "*a* common question," singular, FED.

7

R. Civ. P. 24(b)(1)(B) (emphasis added)—not to raise only the same arguments as an existing party.

Plaintiffs' attempts to argue prejudice, Opp. 8–10, are also unpersuasive. While Plaintiffs worry that FIRE's intervention will cause unnecessary distraction, vague concerns about the mere presence of additional parties are not the kind of "*undue* delay or prejudice" that Rule 24(b) forbids. This case is "in its infancy," and the Court can resolve all oppositions to the preliminary injunction motion "in the same opinion." *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577–79 (6th Cir. 2018). To make things even simpler, FIRE promises to focus its briefs and arguments on its own unique defenses and will not repeat arguments that Defendants raise themselves but will instead incorporate those arguments by reference.

Instead of explaining how FIRE's *party status* will cause undue delay or prejudice, Plaintiffs contend that FIRE's *arguments* will harm them by potentially invalidating their speech codes. Yet, contrary to Plaintiffs' assertions, FIRE does not seek to "challeng[e] individual school conduct codes prohibiting sexual harassment and similar conduct." Opp. 9. FIRE instead seeks to raise constitutional *defenses* that prove why the Final Rule should be upheld and why Plaintiffs are not entitled to relief.

In any event, parties suffer no "prejudice" when intervenors want "to make additional and different legal arguments to the Court based upon evidence already admitted in a completed record," since the parties "will have a full opportunity, in their . . . brief, to counter any such legal arguments." *United States v. Philip Morris USA Inc.*, 2005 WL 1830815, at *5 (D.D.C. July 22, 2005). As one of the Plaintiffs persuasively argued when it permissively intervened to defend the Affordable Care Act, "full and adequate briefing on all sides of this case will not cause prejudice," especially where "[t]he Court will hold the Proposed Intervenor[s] to the same briefing schedule

as the original parties." *Texas v. United States*, 2018 WL 10562846, at *3 (N.D. Tex. May 16, 2018).

After failing to show any downsides to FIRE's intervention, Plaintiffs never even respond to the upsides. They do not contest that FIRE's intervention "will meaningfully assist the Court" because FIRE is a "thought leader and repeat players in this field" with "a wealth of experience and expertise to bear on the historical, factual, and legal questions in this case." Intervention Br. 13. And Plaintiffs do not contest that, without FIRE's intervention, the "important perspectives" of "the college students who 'directly' benefit from the Rule's protections for free speech and due process" "will be missing" from this case. *Id.* Defendants apparently agree that the benefits of FIRE's intervention outweigh any costs, since they consented to permissive intervention.

## **CONCLUSION**

For the foregoing reasons, FIRE's motion to intervene should be granted.

Dated: July 3, 2020                    Respectfully submitted,

                                            */s/ Charles J. Cooper*

Charles J. Cooper (pro hac vice motion granted)
Brian W. Barnes (pro hac vice motion forthcoming)
Nicole J. Moss (pro hac vice motion forthcoming)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
ccooper@cooperkirk.com
bbarnes@cooperkirk.com
nmoss@cooperkirk.com

*Counsel for Foundation for
Individual Rights in Education*

## CERTIFICATE OF WORD COUNT

Pursuant to Judge Koeltl's Individual Rules of Practice II.D, the undersigned counsel hereby certifies that the foregoing Reply complies with the formatting requirements in Rule II.D and the Reply, including body, headings, and footnotes, contains 2,774 words as measured by Microsoft Word.

/s/Charles J. Cooper
Charles J. Cooper