**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**STATE OF NEW YORK, ET AL.,**

                              **Plaintiffs,**          **20-CV-4260 (JGK)**

          **- against -**                        **MEMORANDUM OPINION**
                                              **AND ORDER**
**UNITED STATES DEPARTMENT OF**
**EDUCATION, ET AL.,**

                              **Defendants.**
_____

**JOHN G. KOELTL, District Judge:**

     This case is an action by the State of New York and the
Board of Education for the City School District of the City of
New York, alleging that the defendants, the United States
Department of Education ("DOE") and Elisabeth DeVos, violated
various provisions of the Administrative Procedure Act ("APA").
The movant, Foundation for Individual Rights in Education
("FIRE") seeks to intervene in this case as a defendant. For the
following reasons, the motion to intervene is **denied.**

                              **I.**

     In late 2018, the DOE published a notice of proposed
rulemaking, 83 Fed. Reg. 61,462 (Nov. 29, 2018), which discussed
a Proposed Rule that would, among other things, provide greater
protections for individuals accused of sexual harassment. Compl.
¶ 6. During the notice and comment period, the DOE received
nearly 125,000 comments on the Proposed Rule. See id. On May 19,
2020, the DOE published the Final Rule, Nondiscrimination on the

<u>Basis of Sex in Education Programs or Activities Receiving</u>
<u>Federal Financial Assistance</u>, 85 Fed. Reg. 30,026. <u>Id.</u> at ¶ 2.
The Final Rule's effective date is August 14, 2020. <u>Id.</u> at
¶¶ 11, 95.

 The plaintiffs filed this action on June 04, 2020. The
plaintiffs allege that the Final Rule contains significant
amendments to the DOE's longstanding Title IX regulations,
including new definitions of key terms without adequate
justification. <u>Id.</u> at ¶¶ 101-20. One such change includes
redefining "sexual harassment" as "unwelcome conduct determined
by a reasonable person to be so severe, pervasive, <u>and</u>
objectively offensive that it effectively denies a person equal
access to the recipient's education program or activity," <u>id.</u> at
¶ 108 (emphasis added), instead of the longstanding definition
of "sexual harassment" as unwelcome conduct of a sexual nature
that "is sufficiently severe, persistent, <u>or</u> pervasive to limit
a student's ability to participate in or benefit from an
education program or activity," <u>id.</u> at ¶ 111 (emphasis added).
The plaintiffs also allege that the Final Rule adds new
grievance procedures that are designed to protect accused
students, not to address and remedy sex discrimination in
schools. <u>Id.</u> at ¶¶ 144-60. For example, the Final Rule requires
postsecondary institutions to provide live hearings and cross-
examination by each party's advisor of choice, <u>id.</u> at ¶ 150, and

requires that the decision-maker at a hearing cannot be the same person as the Title IX Coordinator or the person who investigated the underlying conduct, id. at ¶ 157.

The plaintiffs also allege that the Final Rule includes changes that limit schools' obligations to respond to sexual harassment, id. at ¶¶ 121-37; require mandatory dismissal in some instances without investigation and allow for permissive dismissal in other instances, id. at ¶¶ 138-43; hinder institutions' ability to apply state or local protections against sexual harassment, id. at ¶¶ 161-69; remove notice requirements to students and employees and add publication requirements, id. at ¶¶ 170-75; and ignore compliance with contrary federal law, id. at ¶¶ 176-87. The plaintiffs allege that the Final Rule fails to quantify harms and costs to schools resulting from its requirements. Id. at ¶¶ 188-91.

In the underlying action, the plaintiffs allege that the Final Rule exceeds the DOE's statutory authority in violation of 5 U.S.C. § 706(2)(C); that the Final Rule is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law under 5 U.S.C. § 706(2)(A); and that the DOE failed to observe procedures required by law in issuing aspects of the Final Rule, such as notice and comment, in violation of 5 U.S.C. § 706(2)(D). On June 25, 2020, the plaintiffs filed a motion for preliminary injunction, seeking to

enjoin implementation of the Rule, or in the alternative, to stay the effective date pending judicial review.

On June 29, 2020, FIRE filed this motion to intervene. FIRE is a non-profit membership organization with about 50 employees and a network of student members on college campuses throughout the United States. Mem. Of Law in Support of Motion to Intervene ("Mot. to Intervene") at 3-4. FIRE works with college students and faculty who are subjected to disciplinary proceedings for engaging in conduct protected by the First Amendment and works to educate college students and faculty about their free speech and due process rights. Id. at 4. The plaintiffs oppose the motion to intervene, although they do not oppose FIRE's filing an amicus brief in support of the defendants' position. The defendants take no position on the motion to intervene.

**II.**

FIRE seeks to intervene as a defendant under Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B). FIRE seeks to intervene not to argue that the Final Rule was properly adopted in conformity with the APA, but rather to argue that it is constitutionally required under the First Amendment and Due Process. The plaintiffs argue in opposition that FIRE is not entitled to intervene as a matter of right and that the Court should not allow permissive intervention.

**A.**

To intervene as a matter of right, a movant must (1) timely
file an application, (2) show an interest in the action,
(3) demonstrate that the interest may be impaired by the
disposition of the action, and (4) show that the interest is not
protected adequately by the parties to the action. See Fed. R.
Civ. P. 24(a)(2). All four parts of the test must be satisfied
to qualify for intervention as of right. See Washington Elec.
Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d
92, 96 (2d Cir. 1990).

The plaintiffs do not contest that the first two factors,
that the movant has made a timely motion and has an interest in
the action, are met. The movant argues that it has an economic
interest in preserving its staff time and resources; if the
Final Rule were upheld, FIRE could reallocate resources to other
activities that would otherwise be used to resist disciplinary
proceedings. The movant also claims that it has a separate
interest in safeguarding the free speech and due process rights
of its members, at least one of whom is a public university
student currently subject to a disciplinary proceeding for
alleged sexual misconduct. Mot. to Intervene at 5.[1]

---

[1] While the plaintiffs do not contest that the movant has an interest in the
action, the movant's interest depends on the Court's decision on whether the
Final Rule is improper under the APA. If the Court finds that the Final Rule
is valid under the APA, the Court would not need to reach the constitutional
questions and the movant's claim would be moot. See infra, note 2. This fact

The movant argues that its interests will be impaired because invalidation of the Final Rule would imperil the free speech of its members and strip the Final Rule's protections from its members who are currently subject to disciplinary proceedings. "[I]ntervention as of right requires a showing that disposition of the proceeding without the involvement of the putative intervenor would impair the intervenor's ability to protect its interest." Washington Elec. Co-op., 922 F.2d at 98. The movant seeks to uphold the Final Rule, not because it is valid under the APA, but because the Final Rule's new provisions, including its new definition of sexual harassment and new requirements for live-hearings and cross-examination, are allegedly required by the Constitution. However, the plaintiffs' claims relate solely to the validity of the Final Rule under the APA. Because the issue of what rules the Constitution requires is not an issue the Court needs to reach to resolve the claims in the Complaint, no decision by this

---

also weighs against intervention as of right, because "where a proposed intervener's claim is dependent upon a court ruling on an ancillary legal issue, such a claim is too attenuated to warrant intervention." Tymoshenko v. Firtash, No. 11-CV-2794, 2011 WL 5059180, at *2 (S.D.N.Y. Oct. 19, 2011). Moreover, "[i]ntervenors must take the pleadings in a case as they find them," in part because Rule 24(a)(2) "is not intended to allow for the creation of whole new suits by intervenors." Washington Elec. Co-op., 922 F.2d at 97 (denying intervention as of right when proposed intervenor's claims would have substantially changed the nature of the case). FIRE would have this Court decide that certain provisions of the Final Rule are constitutionally required, a far broader issue than that presented in the pleadings.

Court would foreclose the movant's argument that any other definition or procedural requirement in a DOE Rule would be unconstitutional. Accordingly, the movant's interest will not be "adversely affected . . . by principles of stare decisis, arising out of the final judgment to be entered in this case." Oneida Indian Nation of Wis. v. New York, 732 F.2d 261, 265 (2d Cir. 1984).[2] Furthermore, the movant is at liberty to initiate litigation alleging that the Final Rule is required by the Constitution, or in the event the Final Rule is held to be improper under the APA, alleging that the DOE's former policies, if continued or reinstated, are unconstitutional. Additionally, the movant's members who believe their rights are being violated

---

[2] The movant contends that the issue of whether the Final Rule is constitutionally required is a threshold issue that the Court should address first. For example, the movant claims that if the constitutional question is resolved in its favor, the plaintiffs' alleged injury under the APA would not be redressable and the plaintiffs would not have standing. However, the movant relies on cases where the injury allegedly caused by a statute, regulation, or Canon would otherwise be required by another statute or regulation. See White v. United States, 601 F.3d 545, 552 (6th Cir. 2010); Fla. Family Policy Council v. Freeman, 561 F.3d 1246, 1257-58 (11th Cir. 2009); Covenant Media of S.C., LLC v. City of N. Charleston, 493 F.3d 421, 430 (4th Cir. 2007); Black v. LaHood, 882 F. Supp. 2d 98, 106 (D.D.C. 2012). The plaintiffs in this case plainly have standing because they allege that they are harmed by the Final Rule. Moreover, "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988); see also Adelson v. Harris, 774 F.3d 803, 807-08 (2d Cir. 2014) (quoting Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.")). Should the Court find that the Final Rule is proper under the APA, the movant's arguments would be moot; the issue of whether the Constitution requires the Final Rule to be upheld is therefore an issue that arises only if the Court were to find that the Final Rule is invalid under the APA.

under the current procedures without the benefit of the Final
Rule can sue the members' institutions. See <u>Tymoshenko</u>, 2011 WL
5059180, at *2 (quoting <u>In re Holocaust Victim Asset Litig.</u>, 225
F.3d 191, 199 (2d Cir. 1999) ("Because [movants] remain free to
file a separate action, they have not established that they will
be prejudiced if their motion to intervene is denied.")).

The movant also contends that because the plaintiffs claim
that the Final Rule harms the plaintiffs by making it more
difficult to punish student behavior, conversely, FIRE (and its
members) will be harmed economically if the Final Rule were
enjoined and institutions could more easily punish student
behavior because FIRE will expend resources in defending such
cases. That interest is completely speculative. FIRE is not
harmed by the Final Rule that the plaintiffs seek to overturn.
Indeed, FIRE supports the Final Rule although on a different
basis from that asserted by the defendants. This is not a case
where the movant will be liable for increased costs as a result
of the judgment. See <u>Golden Ins. Co. v. PCF State Restorations,
Inc.</u>, No. 17-CV-5390, 2018 WL 10593630, at *6 (S.D.N.Y. May 11,
2018) (economic interests involving indemnification, ability to
receive payment on an underlying agreement, or ability to seek
contribution would be impaired) (collecting cases). Nor is this
a case where the movant has an economic interest simply because
it may be able to reallocate resources from defending people

accused of harassment. Compare New York Pub. Interest Research
Grp., Inc. v. Regents of Univ. of State of N. Y., 516 F.2d 350,
352 (2d Cir. 1975) (per curiam) (economic interests of
pharmacists impaired where revocation of existing regulation
could affect existence of independent local drugstores).
Accordingly, the movant has failed to establish the third
factor.

The movant argues that the DOE would not adequately
represent its interest in upholding the validity of the Final
Rule because the DOE does not argue that the Final Rule's
provisions are constitutionally required. The movant states that
the DOE seeks to "balance protection from sexual harassment with
protection of freedom of speech and expression," 85 Fed. Reg. at
30,165, whereas FIRE seeks only to represent the latter
interests—namely, the free speech and due process rights of
college students and faculty. Mot. to Intervene at 9. "While the
burden to demonstrate inadequacy of representation is generally
speaking minimal," the Second Circuit Court of Appeals has
"demanded a more rigorous showing of inadequacy in cases where
the putative intervenor and a named party have the same ultimate
objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d
171, 179 (2d Cir. 2001) (internal quotation marks and citations
omitted). A movant must "at least overcome the presumption of
adequate representation that arises when it has the same

ultimate objective as a party to the existing suit." U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). "[E]vidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." Butler, Fitzgerald & Potter, 250 F.3d at 180.

It is undisputed that the DOE will vigorously advocate to uphold the Final Rule against the allegations in the complaint, which allege only that the Final Rule is invalid under the APA. The movant has not raised any evidence of collusion, adversity of interest, or incompetence on the part of DOE. In the scope of issues presented in this case, the objectives of the movant and the defendants are aligned, and the defendants adequately represent the movant's interests. The movant wishes only to argue that the Final Rule should be upheld for a different reason that is not necessary to the disposition of the allegations in the complaint. Choosing an alternative strategy or having different motives for litigating a case are not sufficient to warrant intervention as of right. See Homeward Residential, Inc. v. Sand Canyon Corp., No. 12-CV-5067, 2018 WL 840081, at *6 (S.D.N.Y. Feb. 12, 2018) (citations omitted).

**B.**

The movant also seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Under that Rule, the Court may "permit anyone to intervene who . . . has a claim or

defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When considering a motion to intervene by permission under Rule 24(b), a court considers substantially the same factors as for an intervention as "of right." R Best Produce, Inc. v. Shulman-Rabin Marketing Corp., 467 F.3d 238, 240 (2d Cir. 2006). "Permissive intervention is wholly discretionary with the trial court." Brennan, 579 F.2d at 191. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As an initial matter, "the considerations that render [the movant] ineligible for intervention as of right under Rule 24(a) here militate strongly as well against granting permissive intervention under Rule 24(b)." Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018) (citation omitted). In addition, the movant's constitutional defenses would unduly complicate the action and would prejudice the plaintiffs.

The Second Circuit Court of Appeals has explained that "[i]ntervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming

unnecessarily complex, unwieldy or prolonged, on the other
hand[.]" Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir.
2014) (per curiam) (citation omitted). The addition of the
movant's arguments would complicate the analysis by introducing
new issues of law "while not contributing to the development of
the factual record related to the current parties' dispute."
Tymoshenko, 2011 WL 5059180, at *3. The movant's interests in
arguing that the Final Rule must be upheld because it is
constitutionally required is a question that is extraneous to
whether the Final Rule is valid under the APA and that is
unaffected by this litigation. See United States v. City of New
York, 179 F.R.D. 373, 381 (E.D.N.Y. 1998) (denying permissive
intervention where the claimed interests, "although broadly
related to the subject matter of this action, [were] extraneous
to the issues before the court"), aff'd, 198 F.3d 360 (2d Cir.
1999). Moreover, by arguing that the Final Rule is
constitutionally required, the movant seeks a ruling that is
extremely broad in scope. Such a ruling would mean that the
DOE's current and longstanding rules were invalid; it would also
raise questions as to the legality of various institutions'
policies pursuant to state and local laws, which are not at
issue in the complaint. If the Court finds that the Final Rule
is valid under the APA, the plaintiffs' claims would fail and
the movant's claim that the Final Rule was constitutionally

required would be moot. If the Court finds that the Final Rule is invalid under the APA, the plaintiffs' claims would succeed in invalidating the Final Rule, but the movant would then have the opportunity to bring its own lawsuit arguing that any current regulations are unconstitutional and rather, that the Final Rule is constitutionally required. Instead, the movant asks the Court to undertake an examination of certain provisions of the Final Rule and determine whether each provision was required by the Constitution.[3] Arguing that the Constitution affirmatively requires nothing less than the definitions and procedures of the Final Rule differs significantly from deciding that the Final Rule is valid or invalid under the APA; it is a step further even from an allegation that the old rules published by the DOE were unconstitutional. The addition of these arguments would unduly delay the adjudication of the case and would prejudice the plaintiffs' interests. This is particularly true given the fact that a motion for preliminary injunction is presently being briefed on a very short timeline and the Final Rule is scheduled to go into effect on August 14,

---

[3] The movant states that it wishes to raise the legal theory that "many of the rule's protections" are constitutionally required and lists key provisions such as the Final Rule's definition of sexual harassment and grievance procedures. Mot. to Intervene at 1-3. It is not clear whether the movant is arguing that only these provisions of the Final Rule are constitutionally required, or if there are other provisions that are also allegedly constitutionally required.

2020.[4] Accordingly, FIRE's motion for permissive intervention is denied. To the extent that the movant seeks to raise issues that will be helpful to the Court in deciding the issues in this case, the movant may file an amicus brief or initiate a separate litigation.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. FIRE's motion to intervene is denied. To the extent FIRE seeks to file an amicus brief, FIRE may do so by July 17, 2020. The Clerk is directed to close Docket No. 24.

**SO ORDERED.**

**Dated:**      **New York, New York**
              **July 10, 2020**

_/s/ John G. Koeltl_
**John G. Koeltl**
**United States District Judge**

---

[4] On July 7, 2020, the movant filed a Notice of Supplemental Authority. Dkt. No. 42. Seventeen states and the District of Columbia have filed a similar action alleging that the DOE's Final Rule violated various provisions of the APA. See Commonwealth of Pennsylvania v. Devos, No. 20-1468 (D.D.C.). The movant cites to a recent decision by the district court in that case, which allowed the movant to intervene on a permissive basis. Dkt. No. 42-1. As the court noted in the minute order, district courts have "wide latitude" in exercising their discretion to allow permissive intervention. Id. (citation omitted). The Court, in exercising its discretion in this case, denies the movant's request for permissive intervention for the reasons explained above.