UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK and THE BOARD OF EDUCATION FOR THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and ELISABETH DEVOS, *in her official capacity as the Secretary of Education*,<br><br>Defendants. | No. 1:20-cv-04260-JGK |

**PLAINTIFFS' REPLY BRIEF IN
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................1

ARGUMENT .....................................................................................................................1

    I.      Plaintiffs Will Suffer Irreparable Harm if the Rule Is Not Enjoined or Stayed.............1

          A.  Defendants do not contest that Plaintiffs will incur significant administrative burdens and costs. .....................................................................................................1

          B.  The harm to Plaintiffs' students is a proper consideration. .....................................3

    II.     Plaintiffs Are Likely to Succeed on the Merits...............................................................4

          A.  Defendants fail to justify the addition of a second, unduly narrow definition of "program or activity" to ED's Title IX regulations. ................................................3

          B.  Defendants' redefinition of "sexual harassment" conflicts with Title IX's mandate and ED's standards for other forms of harassment. .................................5

          C.  The actual knowledge requirement makes it more difficult for students to seek relief from sexual harassment. ..................................................................................6

          D.  The Rule's prescriptive grievance procedures confer rights on respondents untethered from ED's Title IX obligation to combat sex discrimination. ...............7

          E.  Defendants concede that the Rule requires disclosure of FERPA-protected information. ...............................................................................................................8

          F.  ED's reliance on a flawed cost-benefit analysis is arbitrary and capricious............8

          G.  The Rule's preemption, retaliation, and permissive dismissal provisions are not logical outgrowths of the NPRM. ......................................................................9

    III.    The Court Should Not Limit the Scope of Any Injunction.........................................10

CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carey v. Klutznick*,
   637 F.3d 834 (2d Cir. 1980)...........................................................................................................3

*D.C. v. USDA*,
   --- F. Supp. 3d ----, 2020 WL 1236657 (D.D.C. Mar. 13, 2020)..................................................2

*E. Bay Sanctuary Covenant v. Trump*,
   354 F. Supp. 3d 1094 (N.D. Cal. 2018) .......................................................................................3

*Encino Motorcars, LLC v. Navarro*,
   136 S.Ct. 2117 (2016)..................................................................................................................5

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005).....................................................................................................................9

*John E. Andrus Mem'l, Inc. v. Daines*,
   600 F. Supp. 2d 563 (S.D.N.Y. 2009).........................................................................................3

*Lawrence & Mem. Hosp. v. Sebelius*,
   986 F. Supp. 2d 124 (D. Conn. 2013) .........................................................................................2

*Loving v. I.R.S.*,
   742 F.3d 1013 (D.C. Cir. 2014)...................................................................................................5

*Make the Rd. N.Y. v. McAleenan*,
   405 F. Supp. 3d 1 (D.D.C. 2019) .................................................................................................9

*Metro. Taxicab Bd. of Trade v. City of New York*,
   No. 08-cv-7837, 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008)...................................................2

*Mullins v. City of N.Y.*,
   626 F.3d 47 (2d Cir. 2010)...........................................................................................................2

*Nat'l Ass'n of Home Builders v. E.P.A.*,
   682 F.3d 1032 (D.C. Cir. 2012)...................................................................................................8

*Nat'l Black Media Coal. v. FCC*,
   791 F.2d 1016 (2d Cir. 1986).......................................................................................................9

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
   260 F.3d 1365 (Fed. Cir. 2001)....................................................................................................6

*New York v. HHS*,
  414 F.Supp.3d 475 (S.D.N.Y. 2019)......................................................................................9

*New York v. U.S. Dep't of Homeland Security*,
  408 F. Supp. 3d 334 (S.D.N.Y. 2019)................................................................................2, 10

*Salazar v. King*,
  822 F.3d 61 (2d Cir. 2016)....................................................................................................5

*Texas v. EEOC*,
  933 F.3d 433 (5th Cir. 2019) ................................................................................................5

*Vullo v. Office of the Comptroller of the Currency*,
  378 F. Supp. 3d 271 (S.D.N.Y. 2019)...................................................................................3

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ..............................................................................................3

**FEDERAL STATUTES**

20 U.S.C. § 1681....................................................................................................................4

Administrative Procedure Act, 5 U.S.C. § 706......................................................................1

**FEDERAL REGULATIONS**

34 C.F.R. § 106.2(h) ..............................................................................................................4

85 Fed. Reg. 30,026 (May 19, 2020) .............................................................................. passim

## INTRODUCTION

The Final Rule, 85 Fed. Reg. 30,026 (May 19, 2020) ("Rule") is procedurally and substantively unlawful because it discards decades of well-settled Department of Education ("ED") Title IX policy governing sexual harassment in schools, including redefining key terms, imposing onerous procedural requirements that will expose victims of sexual harassment to trauma and educational harm, and providing individuals accused of harassment many ways to postpone or evade consequences for their conduct.  These changes will harm Plaintiffs, their schools, and their students—including by requiring schools to undertake time-consuming, costly efforts to comply with these radically new policies during the COVID-19 crisis that has disrupted normal operations and strained already limited resources.  Defendants' response ("Opp.") ignores these burdens and fails to engage with Plaintiffs' arguments that the Rule's radical policy changes violate the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").

## ARGUMENT

**I.     Plaintiffs Will Suffer Irreparable Harm if the Rule Is Not Enjoined or Stayed.**

    **A. Defendants do not contest that Plaintiffs will incur significant administrative burdens and costs.**

Defendants do not seriously dispute that Plaintiffs and their schools face significant administrative burdens and related costs in complying with the Rule.  Nor do they dispute that the State's public teaching hospitals face extraordinary challenges during the COVID-19 pandemic.  The diversion of limited resources to comply with the Rule will irreparably injure Plaintiffs.  *See* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. ("Mem.") 12-14.

Plaintiffs must expend significant resources to, *inter alia*, amend policies, conduct trainings, hire new staff, notify students and parents of policy changes, and navigate conflicts between the Rule and collective bargaining agreements.  *Id.* at 11-14.  The loss of these funds—

which cannot be recovered if Plaintiffs ultimately prevail on the merits—is irreparable injury. *See D.C. v. USDA*, --- F. Supp. 3d ----, 2020 WL 1236657, at *23 (D.D.C. Mar. 13, 2020); *New York v. U.S. Dep't of Homeland Security* ("*DHS*"), 408 F. Supp. 3d 334, 350 (S.D.N.Y. 2019).[1]

Defendants posit that Plaintiffs' losses must "endanger their ability to carry out their missions" to constitute irreparable injury. Opp. 22. That is not the standard in this circuit. *See, e.g.*, *Metro. Taxicab Bd. of Trade v. City of New York*, No. 08-cv-7837, 2008 WL 4866021, at *7 (S.D.N.Y. Oct. 31, 2008) (finding irreparable injury based on unquantified costs to comply with local regulations); *Lawrence & Mem. Hosp. v. Sebelius*, 986 F. Supp. 2d 124, 133-34 (D. Conn. 2013) (finding irreparable injury based on noncompensable lost revenue of several million dollars).[2] The Rule requires schools to transform their sexual harassment policies and procedures, including developing cumbersome, dual systems to comply with Title IX and other laws. *See* Mem. 11-16. These are hardly run-of-the-mill compliance costs or "the ordinary costs of analyzing the new policy." Opp. 21, 23. Rather, they are complex, expensive changes that are "self-evidently onerous to implement," *USDA*, 2020 WL 1236657, at *25.

Complying with state and local laws is not self-inflicted harm. *See USDA*, 2020 WL 1236657, at *24. Defendants' flippant suggestion that Plaintiffs could reduce their burdens by "address[ing] only the misconduct covered by the Rule," Opp. 23, disregards the broader legal

---

[1] Defendants misstate the irreparable harm standard. Opp. 27. "Plaintiffs need only show 'a threat of irreparable harm, not that irreparable harm already ha[s] occurred.'" *DHS*, 408 F. Supp. 3d at 350 (quoting *Mullins v. City of N.Y.*, 626 F.3d 47, 55 (2d Cir. 2010)).

[2] Defendants' attempt to distinguish *USDA* based on magnitude of costs, Opp. 22 n.7, is unavailing, as the financial harm Plaintiffs will suffer is substantial. Mem. 13.

framework under which schools operate. Defendants' contention that schools can avoid costs by using existing staff as advisors, Opp. 23-24, ignores that schools must hire separate investigators and adjudicators, and that shifting existing employees to these duties would divert them from their primary roles. *See* Mem. 12.

### B. The likely harm to Plaintiffs' students is a proper consideration.

Defendants are simply wrong that Plaintiffs are not irreparably injured by the harm to their students. *See Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017). Plaintiffs have shown that the Rule will likely chill victims' reporting and expose K-12 children to trauma by requiring them to participate in a developmentally inappropriate adversarial process. Mem. 15-16. These well-documented harms are not speculative.[3] *See, e.g.*, *John E. Andrus Mem'l, Inc. v. Daines*, 600 F. Supp. 2d 563, 573 (S.D.N.Y. 2009).

---

[3] The Court may consider evidence outside the administrative record in determining whether Plaintiffs have established irreparable harm for purposes of this preliminary injunction motion. *See E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1106 (N.D. Cal. 2018). Moreover, Defendants' assertion that that New York cannot assert the interests of its residents as *parens patriae* is wrong. *See Carey v. Klutznick*, 637 F.3d 834, 838 (2d Cir. 1980); *Vullo v. Office of Comptroller of Currency*, 378 F. Supp. 3d 271, 284, 287 (S.D.N.Y. 2019). The Court need not reach this question here given the demonstrable harm to Plaintiffs' proprietary interests and New York's sovereign interests.

## II.     Plaintiffs Are Likely to Succeed on the Merits.

### A. Defendants fail to justify the addition of a second, unduly narrow definition of "program or activity" to ED's Title IX regulations.

Title IX unambiguously defines "program or activity" as "all of the operations" of a school. 20 U.S.C. § 1687; 34 C.F.R. § 106.2(h). Since *all* means *all*, ED lacks statutory authority to create a separate, narrower definition of "education program or activity" solely in the sexual harassment context. 85 Fed. Reg. 30,574 (§ 106.44(a)). By redefining "program or activity" as "locations, events, or circumstances over which the [school] exercised substantial control over both the respondent *and* the context in which the sexual harassment occurred," and to buildings owned or controlled by university-recognized student organizations, 85 Fed. Reg. 30,574 (§ 106.44(a)), the Rule improperly removes schools' obligation to address and remedy the effects of harassment, wherever it occurs, if it creates a hostile environment within its operations.

For example, if a professor uses a school-issued laptop to send sexually harassing messages to a student's social media account during class time, that falls within a recipient's "program or activity." 85 Fed. Reg. 30,202. But if the professor sends the same student harassing messages from a personal device at home, that would, under ED's new definition, fall outside the college's "program or activity." In this example, conduct that has a "concrete, negative effect on [the student's] ability to receive an education," *Davis*, 526 U.S. at 654, including exposing the student to a hostile environment on campus that the statute and ED's existing Title IX policy requires the university to address, would be improperly excluded from Title IX's reach. ED's narrowing of "program or activity" exceeds its authority and is contrary to law.

4

### B. Defendants' redefinition of "sexual harassment" conflicts with Title IX's mandate and ED's standards for other forms of harassment.

The Rule fails to justify its departure from ED's longstanding sexual harassment policy, as reflected in the operative 2001 Revised Sexual Harassment Guidance ("2001 Guidance"). *See* Mem. 20-23. Defendants disingenuously assert that "there is no *law* from which the Rule departs," mischaracterizing past guidance as "nonbinding." Opp. 12. But a guidance can state an agency's policy, *see Loving v. I.R.S.*, 742 F.3d 1013, 1021 (D.C. Cir. 2014), and can "ha[ve] the effect of committing the agency itself to a view of the law that, in turn, forces the plaintiff either to alter its conduct, or expose itself to potential liability," *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019); *see also Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016).

While an agency can change its interpretation of a statute, "the interpretation, whether old or new, must be consistent with the statute," *Loving*, 742 F.3d at 1021, and the agency must give "good reasons" for the change and account for the "serious reliance interests" in a previous longstanding policy, *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2125 (2016). ED's reinterpretation of Title IX's protections against sexual harassment frustrates the statute's antidiscrimination mandate by permitting a range of harassing conduct that schools have long been obligated to address. Mem. 20-22. ED concedes that its redefinition of sexual harassment is not legally required, but does not offer any reasonable explanation for replacing the longstanding standard in the 2001 Guidance with the narrower standard the Supreme Court adopted for private damages lawsuits. The new definition, contrary to Title IX's mandate, authorizes schools to ignore conduct sufficiently serious to impact students' ability to learn simply because it is not so severe *and* pervasive to subject the school to monetary liability. *See* Dear Colleague Letter: Harassment and Bullying (Oct. 26, 2010) 2, 4-9 [ECF No. 20-6]. And

while ED notes the reliance interests engendered by the past policy, 85 Fed. Reg. 30,505, its failure to otherwise account for them is arbitrary and capricious.

The Rule's preamble suggests the new approach is necessary "to ensure that Title IX[] . . . does not . . . chill[] and restrict[] speech and academic freedom, and that recipients are not held responsible for controlling every stray, offensive remark that passes between members of the recipient's community." 85 Fed. Reg. 30,154. But ED's existing policy does not impose such an obligation, as it only reaches conduct "sufficiently serious" to limit a student's access to a school program or activity. 2001 Guidance at 5. Moreover, ED has consistently addressed these concerns. *See* 2001 Guidance at 22-23; First Amendment: Dear Colleague (July 28, 2003), https://www2.ed.gov/about/offices/list/ocr/firstamend.html. ED does not explain how the longstanding standard implicates these purported concerns, or provide evidence that existing protections were inadequate.

ED also fails to explain the Rule's inconsistency with Title VI and Section 504 enforcement standards, wrongly suggesting that no explanation is required. Opp. 14. *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1379 (Fed. Cir. 2001) (agency required to explain basis for inconsistent interpretations of identical language in related statutes). While the Rule's preamble asserts that these statutes "raise complex questions of evidentiary standards, definitions, grievance procedures, remedies, and more," 85 Fed. Reg. 30,529, it arbitrarily fails to specify *any* distinctions warranting vastly different standards.

### C. The actual knowledge requirement makes it more difficult for students to seek relief from sexual harassment.

The Rule's actual knowledge requirement, which eliminates schools' longstanding obligation to address harassment for which they had constructive notice and drastically limits the number of postsecondary employees to whom "actual notice" may be given, will make it more

6

difficult for students experiencing harassment to seek relief from their institutions. *See* Mem. 20-22. ED concedes that Supreme Court precedent does not address whether this standard is reasonable in the enforcement context, Opp. 14-15, and it is not. In postsecondary institutions, the Rule excludes scores of employees whose knowledge of harassment would trigger a school's obligation to respond, 85 Fed. Reg. 30,038, and permits all schools to disregard harassment that limits a student's ability to participate in or benefit from the education program by claiming a lack of notice to the "correct" officials. ED suggests, without plausible explanation, that the different notice requirements for K-12 and higher educational settings are justified by an undefined interest in respecting complainants' "autonomy." *Id.* at 30,034. ED fails to justify how the actual knowledge requirement or the differing standards between K-12 schools and higher educational institutions further that purported interest or otherwise effectuates Title IX's mandate.

### D. The Rule's prescriptive grievance procedures confer rights on respondents untethered to ED's Title IX obligation to combat sex discrimination.

Title IX requires that grievance procedures be implemented in a way that does not discriminate against any party on the basis of *sex*. Plaintiffs have not argued otherwise. *See* Mem. 18-19. Defendants aver that "§ 106.45(a) does not assume that any unfair treatment constitutes sex discrimination," Opp. 10, but by permitting respondents to make a Title IX complaint for *any* alleged violation of the prescriptive grievance procedures, that is exactly what it does. Whether a school's enforcement of its own discipline policy is impermissibly gender-motivated is a fact-specific inquiry. Mem. 18. Defendants have not shown that systemic *sex-based* violations of respondents' rights permit it to confer these protections on accused students or justify the imposition of rigid and burdensome grievance procedures on schools.

The Rule also fails to consider that adversarial grievance procedures are developmentally inappropriate for K-12 students and will subject child victims to multiple traumatizing interviews about their harassment. Mem. 24. The Rule's cumbersome procedures will also unduly delay a school's investigation and implementation of appropriate interventions and discipline, undermining the impact of those measures on students and the school's ability to maintain safe, nondiscriminatory learning environments. *Id.* at 16. Defendants fail to respond to these points, implicitly conceding that the Rule failed to consider important issues in the K-12 context.

### E. Defendants concede that the Rule requires disclosure of FERPA-protected information.

The Rule's blanket requirement that schools allow both parties to examine all evidence directly related to the allegations in a formal complaint, 85 Fed. Reg. 30,576 (§ 106.45(b)(5)(vi)), requires schools to disclose FERPA-protected information, including parties' academic transcripts, discipline records, and information relating to prior harassment complaints. Mem. 26-27. Defendants fail to engage with these conflicts, stating only that certain personally identifiable information in documents not directly related to harassment allegations could be redacted. Opp. 18-19. Defendants do not disturb Plaintiffs' argument that the Rule is an unjustified departure from prior policy, which sought to balance students' rights to both privacy and fair grievance procedures, and is contrary to FERPA.

### F. ED's reliance on a flawed cost-benefit analysis is arbitrary and capricious.

ED is incorrect that its cost-benefit analysis is unreviewable, as ED relied on it to justify the Rule. *See* 85 Fed. Reg. 30,550-51, 30,565-68; *Michigan v. EPA*, 135 S.Ct. 2699, 2707 (2015); *Nat'l Ass'n of Home Builders v. E.P.A.*, 682 F.3d 1032, 1040 (D.C. Cir. 2012). "[I]t is the very definition of arbitrariness in rulemaking if an agency refuses to acknowledge (or fails to obtain) the facts and figures that matter prior to exercising its discretion to promulgate a rule."

8

*Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 60 (D.D.C. 2019). ED failed to consider the costs of unaddressed harassment or to adequately account for substantial compliance costs, merely citing poor quality data related to now-withdrawn 2011 Dear Colleague Letter. ED's failure to consider these costs renders its analysis unsound, and its reliance on it is arbitrary and capricious.

### G. The Rule's preemption, retaliation, and permissive dismissal provisions are not logical outgrowths of the NPRM.

Defendants concede that the preemption, retaliation, and permissive dismissal provisions were not contained in the NPRM. Their purported excuses are insufficient.

First, courts have squarely rejected Defendants' claim that Plaintiffs had "fair notice" of the preemption and retaliation provisions because some commenters mentioned federalism and retaliation concerns. Opp. 19-20. *See New York v. HHS*, 414 F. Supp. 3d 475, 560-61 (S.D.N.Y. 2019) ("An agency 'cannot bootstrap notice from a comment.'" (quoting *Nat'l Black Media Coal. v. FCC*, 791 F.2d 1016, 1023 (2d Cir. 1986))). The NPRM's general reference to potential federalism implications neither made the preemption clause foreseeable nor "describe[d] the range of alternatives being considered with reasonable specificity." *Id.* at 559 (citing *Time Warner Cable Inc. v. FCC*, 729 F.3d 137, 170 (2d Cir. 2013)). The NPRM's failure to include any mention of retaliation—let alone the novel, broad conception of it adopted in the Rule—is arbitrary and capricious.[4] Defendants only mention the provision's confidentiality language, Opp. 20, effectively conceding that the rest of the provision is not an outgrowth of the NPRM.

---

[4] The Rule, which allows retaliation claims by respondents, goes further than the Supreme Court. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (a "person [who] has *complained* of sex discrimination" may bring a Title IX retaliation claim (emphasis added)).

9

Finally, the Rule's permissive dismissal provision is far from "harmless," *id.* at 21, as it potentially conflicts with or undermines schools' other legal obligations, and was not properly subject to notice and comment. Mem. 28-29.

### III. The Court Should Not Limit the Scope of Any Injunction.

Defendants ask the Court to limit any relief to Plaintiffs, citing other pending challenges to the Rule. Opp. 29. That the Rule is being challenged elsewhere mitigates *in favor* of a national injunction, as piecemeal injunctions could create conflicting standards for schools based only on where they are located. *See DHS*, 408 F. Supp. at 352. Since "there is no public interest in allowing Defendants to proceed with an unlawful, arbitrary, and capricious rule that exceeds their statutory authority," *id.* at 351, and Plaintiffs have presented evidence of the Rule's adverse public impact, an injunction fully barring implementation of the Rule is appropriate.

## CONCLUSION

The Court should grant Plaintiffs' Motion for Preliminary Injunction.

DATED:  July 17, 2020	Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: /s/ Joseph Wardenski
Joseph Wardenski, *Senior Trial Counsel*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Morenike Fajana, *Special Counsel*
Lindsay McKenzie, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8441
Fax: (212) 416-6007
Joseph.Wardenski@ag.ny.gov

*Attorneys for the State of New York*

JAMES E. JOHNSON
*Corporation Counsel of the City of New York*

By: /s/ Sabita Krishnan
Sabita Krishnan
Joseph Pepe
Tonya Jenerette
Assistant Corporation Counsel
100 Church Street
New York, New York 10007
(212) 356-2273
skrishna@law.nyc.gov

*Attorneys for the Board of Education of the City School District of the City of New York*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief contains 2,800 words (not including the cover page, table of contents, table of authorities, or this certificate of compliance), calculated using the word count feature in Microsoft Word for Office 365, and that the brief complies with the formatting rules contained in Section II.D. of the Individual Practices of Judge John G. Koeltl.

/s/ Joseph Wardenski
Joseph Wardenski