**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK and THE BOARD OF
EDUCATION FOR THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK,

Plaintiffs.

v.

UNITED STATES DEPARTMENT OF
EDUCATION and ELISABETH DEVOS, *in her
official capacity as the Secretary of Education*,

Defendants.

Case No. 1:20-cv-04260-JGK

The Honorable John G. Koeltl

---

**AMICUS BRIEF OF STOP ABUSIVE AND VIOLENT ENVIRONMENTS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION**

/s/ Susan Kaplan
Susan Kaplan, Ph.D., Esq.
The Kaplan Law Office
30 Wall St. 8th Floor
New York, NY 10005
Tel: (347) 683-2505
Fax: (212) 898-1231
skaplan@lawkaplan.com
*Counsel for S.A.V.E.*

/s/  Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
*Pro Hac Vice* Application Forthcoming
*Counsel for S.A.V.E.*

DATED: July 17, 2020

# TABLE OF CONTENTS

*STATEMENT OF INTEREST OF AMICUS CURIAE* ........................................................*1*

*SUMMARY OF ARGUMENT* ................................................................................*2*

*ARGUMENT* ................................................................................................*4*

    **I.   Plaintiffs are Unlikely to Succeed on the Merits at least insofar as Department of Education has Jurisdiction to Eliminate Discrimination in the Disciplinary Process.** ........4

    **II.   The Balance of Equities and Public Interest Require that the Court Deny Plaintiff's Motion Because *All* Students Benefit from the Regulations.** ................................................7

        **a.   Title IX Protects the Rights of All Accused Students—Male and Female.** .................7

        **b.   Recent Litigation Reflects Existing Discrimination in Campus Disciplinary Systems.** ........................................................................................11

        **c.   The Regulations Specifically Seek to Resolve this Issue by Treating Male and Female Students Equitably.** ........................................................................12

        **d.   SAVE has Collected Research, Data, and Case Summaries to Demonstrate how Due Process is Compromised for Male Accused Students in Title IX Proceedings.** ......13

        **e.   Federal Circuit Courts Have Increasingly Recognized the Need for Greater Due Process Protections in the Campus Disciplinary Context.** ........................................18

    **III.  Robust Due Process Protections are in the Public Interest and Weigh in Favor of Denying the Plaintiffs' Motion.** ........................................................................**20**

        **a.   The Regulations Assist in Restoring Due Process for Accused Students.**.................20

        **b.   The Regulations Require that all Title IX Investigators are Unbiased and Undergo Training, Benefitting Both Accusers and Accused.** ................................................20

        **c.   The Regulations Ensure Equality in the Gathering and Presenting of Evidence.**...21

        **d.   The Regulations Permit Live Hearings, Allowing Accused and Accusing Students to Take Control of Their Stories and to Advocate for Themselves.** ........................22

        **e.   The Regulations Provide for a More Concrete Determination of Responsibility.**....23

        **f.   The Balance of Equities and Public Interest Favors the Regulations.** .....................24

*CONCLUSION*................................................................................................*25*

# TABLE OF AUTHORITIES

### CASES

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) ------------------------------------------------------24

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995) ------------------------------23

*Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961)------------------------------------------------18

*Doe v. Amherst College*, 238 F. Supp. 3d 195 (D. Mass. 2017) -----------------------------------------------17

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) ------------------------------------------------------------------18

*Doe v. Brown Univ.*, 327 F. Supp. 3d 397 (D.R.I. 2018) ------------------------------------------------------16

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) ---------------------------------------------------------- 4

*Doe v. Grinnell College*, No. 4:17-cv-00079, Slip. Op. (S.D. Iowa July 9, 2019)------------------------------13

*Doe v. Johnson and Wales Univ.* No. 1:18-cv-00106, Slip. Op. (D.R.I. May 24, 2018), --------------------14

*Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018) ------------------------------------------------------16

*Doe v. Oberlin College,* 2020 WL 3495298 No. 19-3342, at (6th Cir. June 29, 2020) ----------------------- 6

*Doe v. Ohio State Univ.,* 323 F. Supp. 3d 962 (S.D. Ohio) ---------------------------------------------------16

*Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019.) ----------------------------------------------------13

*Doe v. Rollins*, No. 6:18-cv-01069, Slip Op. (M.D.Fla. March 9, 2020) -------------------------------------13

*Doe v. Syracuse Univ.*, 2020 WL 871250 (N.D.N.Y. 2020) ---------------------------------------------------14

*Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125 (N.D.N.Y. 2018)------------------------------------------------17

*Doe v. Univ. of the Sciences*, 2020 WL 2786840 (3rd Cir. 2020)------------------------------------------- 17, 18

*Doe v. Virginia Polytechnic Inst. and State Univ.,* 2020 WL 1309461 (W.D. Va. 2020)----------------------15

*Doe v. Washington & Lee*, 2015 WL 4647996 (W.D. Va. 2015) -----------------------------------------------14

*Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56 (1st Cir. 2019) ----------------------------------------------18

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005) ---------------------------------------------- 4

*Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) ----------------------------------------------23

*Jacobson v. Blaise*, 69 N.Y.S.3d 419 (3rd Dep't. 2018) ---------------------------------------------------------14

*Jia v. Univ. of Miami*, 327 F. Supp. 3d 397 (D.R.I. 2018) ---------------------------------------------------16

*League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ------------------------23

*Marshall v. Indiana University,* 170 F. Supp. 3d 1201 (S.D. Ind. 2016) ----------------------------------16

*Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019) ------------------------------------------------------ 6

*Montague v. Yale Univ.*, No. 16-cv-00885 Slip. Op. (D.Conn. March 29, 2019) ------------------------------14

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982) ----------------------------------------------------------- 4

*Saravanan v. Drexel Univ.*, 2017 WL 5659821 (E.D. Pa. 2017) ----------------------------------------- 13, 15

*Sassaman v. Gamache*, 566 F.3d 307 (2d Cir. 2009) -------------------------------------------------------- 6

*Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) ----------------------------------------------------- 2

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). ------------------------------------- 2

<u>R</u><u>EGULATIONS</u>

34 C.F.R. § 106.30(a) ---------------------------------------------------------------------------------------------22

34 C.F.R. § 106.45(b)(6)(i)------------------------------------------------------------------------- 18, 19, 21, 22

34 C.F.R. §106.45 (b)(5)(ii) --------------------------------------------------------------------------------------21

34 C.F.R. §106.45 (b)(5)(iii) -------------------------------------------------------------------------------------21

34 C.F.R. §106.45 (b)(5)(iv). ------------------------------------------------------------------------------- 21, 22

34 C.F.R. §106.45 (b)(5)(vi). -------------------------------------------------------------------------------------21

34 C.F.R. §106.45(b)(1). ------------------------------------------------------------------------------------ 12, 19

34 C.F.R. §106.45(b)(10)(i)(D) ----------------------------------------------------------------------------------20

34 C.F.R. §106.45(b)(5)(i).-----------------------------------------------------------------------------------------21

34 C.F.R. §106.45(b)(8)(i)(A)-(C).------------------------------------------------------------23

34 C.F.R. §106.45(b)(8)(ii). ----------------------------------------------------------------23

34 C.F.R. §106.45(b)(8)(iii)(A)-(F). --------------------------------------------------------23

34 C.F.R. §106.45(b)(iii) ------------------------------------------------------------------20

34 CFR 106 ---------------------------------------------------------------------------------7

85 Fed. Reg. 30,026 (May 19, 2020) (to be codified at 34 C.F.R. Part 106) (available at:

    https://www2.ed.gov/about/offices/list/ocr/docs/titleix-regs-unofficial.pdf)\s------------------ 2

85 Fed. Reg. 30048-50. --------------------------------------------------------------------12

85 Fed. Reg. 30238-407------------------------------------------------------------------- 5

*See* 34 C.F.R. §106.45 (b)(5)(ii)------------------------------------------------------------20

<u>C<small>ONSTITUTIONAL</small> P<small>ROVISIONS</small></u>

U.S. Const. Amend. V, XIV. --------------------------------------------------------------- 7

<u>O<small>THER</small> A<small>UTHORITIES</small></u>

20 USC 1681 *et seq.* -------------------------------------------------------------------- 7

62 Fed. Reg. 12,034 (Mar. 13, 1997)
    https://www2.ed.gov/about/offices/list/ocr/docs/sexhar01.htm ----------------------------- 7

Benjamin North, *Interactive Spreadsheet of Lawsuits Against Universities*, SAVE blog,
    http://www.saveservices.org/sexual-assault/complaints-and-lawsuits/lawsuit-analysis/ -- 1, 11, 19

Centers for Disease Control, *National Intimate Partner and Sexual Violence Survey*
    https://www.cdc.gov/violenceprevention/datasources/nisvs/index.html.-------------------------- 5

Def.'s Mem. in Opp. to Pls. Mot. for Prelim. Injunct., ECF No. 52------------------------------- 2

Elizabeth Bartholet, Nancy Gertner, Janet Halley, and Jeannie Suk Gersen, Harvard Library Office
    for Scholarly Communication, *Fairness For All Students Under Title IX*,
    https://dash.harvard.edu/bitstream/handle/1/33789434/Fairness%20for%20All%20Students.p
    df?sequence=1. ----------------------------------------------------------------------------10

Evan Gerstmann, *The Stat That 1 In 5 College Women Are Sexually Assaulted Doesn't Mean What You Think It Means*, Forbes (July 16, 2020), https://www.forbes.com/sites/evangerstmann/2019/01/27/the-stat-that-1-in-5-college-women-are-sexually-assaulted-doesnt-mean-what-you-think-it-means/#6018e68e2217 ------------------ 14

*Faculty Members Targeted by Title IX*, SAVE blog, http://www.saveservices.org/sexual-assault/faculty-members/. ----------------------------------------------------------------------------------------------------- 1

John Adams' Argument for the Defense, December 3-4, 1770, https://founders.archives.gov/documents/Adams/05-03-02-0001-0004-001 ----------------------- 1

Jonathan Taylor, *Plaintiff Demographics in Accused Student Lawsuits*, TITLE IX FOR ALL (July 7, 2020), available at https://www.titleixforall.com/wp-content/uploads/2020/07/Plaintiff-Demographics-by-Race-and-Sex-Title-IX-Lawsuits-2020-7-6.pdf (showing that 97.69% of these plaintiffs are male------------------------------------------------------------------------------------12

*Key Information about Title IX Regulation*, SAVE blog, http://www.saveservices.org/title-ix-regulation/. ------------------------------------------------------------------------------------------------------- 1

Lara Stemple and Ilan Meyer, *The Sexual Victimization of Men in America: New Data Challenge Old Assumptions*. American Journal of Public Health (2014). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4062022/ -------------------------------------- 5

NISVS, Table 3.1. --------------------------------------------------------------------------------------------- 5

NISVS, Table 3.5. --------------------------------------------------------------------------------------------- 5

Plaintiff's Mem. in Supp. of Mot. for Prelim. Inj. ("Pls. Mot."), ECF 19 ------------------------------- 4, 6

*Proposed Title IX Regulations Target Sex Bias on College Campuses*, SAVE blog, (Jan. 24, 2019) http://www.saveservices.org/2019/01/proposed-title-ix-regulations-target-sex-bias-on-college-campuses/.---------------------------------------------------------------------------------------------------------- 1

Resolution Agreement, Dayton Regional STEM School, OCR No. 15-14-1205, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/15141205-b.pdf-------- 8

Resolution Agreement, Grand Valley State University, OCR No. 15-19-2052 (Feb. 2, 2020), http://www.saveservices.org/wp-content/uploads/Grand-Valley-State-University-15-19-2052-Resolution-Agreement-SIGNED.pdf ------------------------------------------------------------------- 9

Resolution Agreement, Jefferson Cmty. & Technical College, OCR No. 03142384 (Feb. 20, 2015), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03142384-b.pd--------- 9

Resolution Agreement, Jonesboro Cmty. Consolidated School District 43, No. 05-15-1033, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/05151033-b.pdf-------- 8

Resolution Agreement, Kern High School District, OCR No. 09-14-1339,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/09141338-b.pdf-------- 8

Resolution Agreement, Lyon College, OCR No. 06-12-2184,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06122184-b.pd--------- 9

Resolution Agreement, Muscogee Cnty School District, OCR No. 04-13-1162,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/04131162-b.pd--------- 8

Resolution Agreement, Pasco Cnty School District, FL, OCR No. 04-12-1251,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/04121251-b.pdf.------- 8

Resolution Agreement, Sandwich Cmty. Unit School District 430, OCR No. 05-15-1051,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/05151051-b.pdf.------- 8

Resolution Agreement, Seattle University, OCR Nos. 10152145, 10152146, 10152147, 10152148,
(Nov. 19, 2015),
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/10152145-b.pdf-------- 9

Resolution Agreement, Southern Methodist University, OCR No. 06112126, 06132081, 06132088,
(Nov. 16, 2014),
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06112126-b.pdf-------- 9

Resolution Agreement, Tulane University, OCR No. 06-18-2230,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06182230-b.pd--------- 9

Resolution Agreement, University of Central Arkansas, OCR No. 07-19-2134, (Mar. 4, 2020),
http://www.saveservices.org/wp-content/uploads/07192134-UCA-Agreement-1.pdf------------10

Resolution Agreement, Wesley College, No. 03-15-2329,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03152329-a.pd--------10

Resolution Agreement, Yonkers Public Schools, OCR No. 02-16-1243,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/02161243-b.pdf-------- 9

Samantha Harris & KC Johnson, *Campus Courts in Court: The Rise in Judicial Involvement in Campus
Sexual Misconduct Adjudications*, 22 N.Y.U. J. LEGIS. & PUB. POL'Y 49 (2019) (Harris &
Johnson).------------------------------------------------------------------------------------ 11, 12

Samantha Harris and KC Johnson, *Lawsuits Filed by Students Accused of Sexual Misconduct, 4/4/2011
through 5/1/2020,* https://docs.google.com/spreadsheets/d/e/2PACX-
1vQNJ5mtRNzFHhValDrCcSBkafZEDuvF5z9qmYneXCi0UD2NUaffHsd5g4zlmnIhP3MINY
pURNfVwSZK/pubhtml?urp=gmail_link#] ----------------------------------------------------------11

*Special Reports*, SAVE blog, http://www.saveservices.org/reports/ ---------------------------------- 1

*Statement in Support of Due Process in Campus Disciplinary Proceedings*, SAVE,
http://www.saveservices.org/wp-content/uploads/Due-Process-Statement-11.29.2018.pdf. ----- 1

Turchik, *Sexual victimization among male college students: Assault severity, sexual functioning, and health risk behaviors.* Psychology of Men and Masculinity (2012).------------------------------------------------------ 5

U.S. Dep't of Educ. Office of Civil Rights, *Dear Colleague Letter*, (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf----------------- 8

U.S. Dep't of Educ. Office of Civil Rights, *Questions and Answers on Title IX and Sexual Violence*, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ---------------------- 8, 11

U.S. Dep't of Educ. Office of Civil Rights, *Title IX and Sex Discrimination* (Apr. 2015), https://www2.ed.gov/about/offices/list/ocr/docs/tix_dis.html -------------------------------------7

U.S. Dep't of Educ., Office for Civil Rights, No. 03142257, (Nov. 4, 2014), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03142257-a.pdf --------9

U.S. Dep't of Educ., Office for Civil Rights, *Revised Sexual Harassment Guidance; Harassment of Students by School Employees, Other Students, or Third Parties* (2001) ------------------------------------------------- 7, 10

U.S. Dep't of Educ., Office of Civil Rights, No. 03-14-2241, (Sept. 29, 2014), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03142241-a.pdf --------9

U.S. Dep't of Educ., *Schools Must Post Important Information Regarding Title IX on School Websites Under the New Title IX Rule*, Office of Civil Rights Blog – 20200518 (May 18, 2020), https://www2.ed.gov/about/offices/list/ocr/blog/20200518.html. ----------------------------------20

U.S. Department of Educ., *Dear Colleague Letter*, (Apr. 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html ----------------------- 8

U.S. Department of Educ., *Dear Colleague Letter*, (Apr. 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.-----------------------10

*Victims Deserve Better than a Kangaroo Court*, SAVE blog, http://www.saveservices.org/sexual-assault/victims-deserve-better/. ------------------------------------------------------------------------------1

## STATEMENT OF INTEREST OF AMICUS CURIAE

Established in 2008, *amicus curiae* Stop Abusive and Violent Environments ("SAVE") is a 501(c)(3) non-profit, DBA entity of the Center for Prosecutor Integrity, and leader in the national movement to assure fairness and due process on college campuses. In recent years, SAVE has identified numerous cases in which complainants were mistreated by campus Title IX procedures,[1] published five relevant Special Reports,[2] commented on the proposed Title IX regulations,[3] coordinated a Due Process Statement signed by nearly 300 leading law professors and others,[4] sponsored an interactive spreadsheet of lawsuits against universities,[5] compiled information on the due process violations of faculty members,[6] and more.[7]

Through its research and experiences, SAVE has recognized the rampant disparate treatment discrimination, particularly against male students, that has been occurring on college campuses since at least 2011. This discrimination occurs within the disciplinary process itself, where students are dragged through inquisitorial systems designed to churn out guilty findings with no regard for basic due process rights that have existed in English common law since before the Republic.[8] These rights include such foundational concepts such as: the right of the accused to know what one is accused,

---

[1] *Victims Deserve Better than a Kangaroo Court*, SAVE blog, http://www.saveservices.org/sexual-assault/victims-deserve-better/.
[2] *Special Reports*, SAVE blog, http://www.saveservices.org/reports/.
[3] *Proposed Title IX Regulations Target Sex Bias on College Campuses*, SAVE blog, (Jan. 24, 2019) http://www.saveservices.org/2019/01/proposed-title-ix-regulations-target-sex-bias-on-college-campuses/.
[4] *Statement in Support of Due Process in Campus Disciplinary Proceedings*, SAVE, http://www.saveservices.org/wp-content/uploads/Due-Process-Statement-11.29.2018.pdf.
[5] Benjamin North, *Interactive Spreadsheet of Lawsuits Against Universities*, SAVE blog, http://www.saveservices.org/sexual-assault/complaints-and-lawsuits/lawsuit-analysis/
[6] *Faculty Members Targeted by Title IX*, SAVE blog, http://www.saveservices.org/sexual-assault/faculty-members/.
[7] *Key Information about Title IX Regulation*, SAVE blog, http://www.saveservices.org/title-ix-regulation/.
[8] John Adams' Argument for the Defense, December 3-4, 1770, https://founders.archives.gov/documents/Adams/05-03-02-0001-0004-0016.

the right to present evidence in one's defense, the right to call and examine witnesses, and above all, the right to the presumption of innocence until proven guilty. These most basic rights are repeatedly denied to accused students, who are overwhelmingly male, across the country. Like a criminal guilty verdict, a finding of "responsibility" for a Title IX offense on college campuses is life-altering and can result in the absolute inability for the wrongfully accused student to continue in his career or education. These findings are overwhelmingly the result of adjudications that are biased on the basis of sex in violation of Title IX itself. Action by the Department of Education is desperately needed. The Regulations,[9] issued by the U.S. Department of Education, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, remedy this problem.

## SUMMARY OF ARGUMENT

Plaintiffs moved for a preliminary injunction to prevent the Regulations from going into effect on August 14, 2020. A preliminary injunction is an extraordinary remedy that should only be issued upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008). To make this showing, plaintiffs must demonstrate (1) they are likely to succeed on the merits, (2) they will experience irreparable harm in the absence of injunctive relief, (3) the balance of equities tip in their favor, and (4) the preliminary injunction is in the public interest. *Id.* In the Second Circuit, a plaintiff faces a "more rigorous" likelihood of success standard when challenging "government action taken in the public interest pursuant to a statutory or regulatory scheme." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007). SAVE agrees with the

---

[9] 85 Fed. Reg. 30,026 (May 19, 2020) (to be codified at 34 C.F.R. Part 106) (available at: https://www2.ed.gov/about/offices/list/ocr/docs/titleix-regs-unofficial.pdf) ("Regulations").

Department of Justice that plaintiffs do not meet this standard. Def.'s Mem. in Opp. to Pls. Mot. for Prelim. Injunct., ECF No. 52.

This brief will first provide a key supplement to the Department of Justice's memorandum section (I)(A)(2), showing that the Regulations are within the Department of Education's jurisdiction under Title IX as they require a fair grievance process. Next, SAVE will bring serious policy considerations to the Court's attention that are ignored by plaintiffs and their *amici*. These considerations tip the balance of equities in favor of the Regulations and show the Regulations are in the public interest.

Title IX is for all students, both males and females, both accuser and accused. The plaintiffs correctly state that Title IX's mandate is to eradicate discrimination in education, and that the scope of Title IX protections is "far reaching." Compl., ECF No. 1, ¶ 3. The plaintiffs contradict that sentiment, however, in the remainder of their complaint by suggesting that Title IX's protections are limited to alleged victims of sexual harassment and not those accused of it. Title IX has no such limitation; its purpose is to eliminate *all* discrimination on the basis of sex, not just the forms plaintiffs and supporting *amici* prefer to discuss. The discrimination at issue here is the disparate treatment discrimination on the basis of sex that occurs when a university erroneously finds a student responsible, at least in part, on the basis of sex. The Regulations seek to eliminate this discrimination, thus fulfilling the purpose of Title IX.

The Court should deny plaintiffs' motion because the balance of equities weighs in favor of the Regulations. The Regulations are in the public interest because they protect *all* students. Specifically, the Regulations: (1) provide additional protections for complaining students, ensuring they have more autonomy in the process, thereby limiting a college or university's ability to discriminate; and (2) protect respondents, who are overwhelmingly male, from erroneous and discriminatory punishments. Further, the Regulations provide due process protections for *all*

students. The Regulations are desperately needed to effectuate the purpose of Title IX: to eliminate discrimination on the basis of sex in education.

## **ARGUMENT**

I.   **Plaintiffs are Unlikely to Succeed on the Merits at least insofar as Department of Education has Jurisdiction to Eliminate Discrimination in the Disciplinary Process.**

Plaintiffs argue that in issuing the Regulations, the Department of Education exceeded its jurisdiction by, *inter alia*, mandating grievance procedures for Title IX violations (sexual harassment and assault claims) on campus. This is inaccurate. Plaintiffs first acknowledge that "Title IX must be construed expansively to 'accord it a sweep as broad as its language', and that Title IX 'covers a wide range of intentional unequal treatment' based on sex." Compl., ECF No. 1*, ¶ 3., citing N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982), *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). Ironically, plaintiffs appear surprised at the suggestion that Title IX also protects "[students] accused of sexual harassment." Plaintiff's Mem. in Supp. of Mot. for Prelim. Inj. ("Pls. Mot."), ECF No. 19, at 18 (italicization of the word "accused" omitted).

Plaintiffs also acknowledge, however, that courts have found that a school can violate a respondent's Title IX rights, demonstrating that the accused do possess Title IX rights. *Id.*, *citing Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016). Finally, plaintiffs assert that "Title IX does not provide rights to respondents beyond those shared by all students—*i.e.*, the right to attend school free of sex discrimination." *Id.* On this final point, plaintiffs are correct; Title IX guarantees students the right to be free from discrimination on the basis of sex in education, including when it takes the form of "a university's decision to discipline a student…on the basis of sex." *Doe v. Purdue Univ.*, 928 F.3d 652, 667-8 (7th Cir. 2019).

4

Confusion aside, seemingly conceding that respondents are theoretically entitled to Title IX protections, plaintiffs argue that the Department of Education "has failed to show, through data or otherwise, that respondents are, as a group, mistreated on the basis of sex under current standards." Pls. Mot., ECF No. 19 at 18. Not only has the Department of Education extensively shown this very information in the Regulation's Preamble, *see* 85 Fed. Reg. 30238-407, SAVE provides additional factual and analytical support below to defeat plaintiffs' naked assertion.

As shown at length in Section II of this brief, males comprise the overwhelming majority of accused students (respondents). One might be tempted to think this is because males commit the majority of sexual harassment and assault, but that is inaccurate. Government data through the CDC's National Intimate Partner and Sexual Violence Survey ("NISVS")[10] includes "made to penetrate" offenses (where a victim is forced to penetrate the perpetrator) and reports the following numbers of persons who were sexually victimized in the general population between 2010 and 2012: 1.7 million males were made to penetrate[11] and 1.5 million women were victims of rape.[12] UCLA researchers Lara Stemple and Ilan Meyer explain that "by introducing the term, 'made to penetrate,' the CDC has added new detail to help understand what happens when men are sexually victimized…therefore, to the extent that males experience nonconsensual sex differently (i.e., being made to penetrate), male victimization will remain vastly undercounted in federal data collection on violent crime."[13] While the NISVS does not provide separate results for college students, two other methodologically rigorous studies focused on this population: (1) a survey of 302 male college

---

[10] Centers for Disease Control, *National Intimate Partner and Sexual Violence Survey* https://www.cdc.gov/violenceprevention/datasources/nisvs/index.html.
[11] NISVS, Table 3.5.
[12] NISVS, Table 3.1.
[13] Lara Stemple and Ilan Meyer, *The Sexual Victimization of Men in America: New Data Challenge Old Assumptions*. American Journal of Public Health (2014). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4062022/

students found that 51.2% reported experiencing at least one sexual victimization since age 16[14]; and (2) a study of 284 college and high school males found that 43% reported being sexually coerced, with the majority of such incidents resulting in unwanted sexual intercourse. Of these, 95% of men reported female perpetrators.[15] Therefore, females also commit a significant portion of sexual assaults.

In light of this scientific data, the near-total male composition of student respondents appears suspect. Indeed, under the current data, there should be a near-equal number of female and male respondents on campus. The list of wrongfully disciplined respondents is, however, "overwhelmingly male."[16] As shown through case studies in Section II, this is due to discriminatory disparate treatment of males in the disciplinary process, in violation of Title IX. Indeed, it is a sexual stereotype at odds with the civil-rights laws to assume that men are guilty. *See, e.g., Sassaman v. Gamache*, 566 F.3d 307 (2d Cir. 2009) (Title VII was violated by employer presuming accused was guilty because he was male); *Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019) (erroneous finding of guilt, coupled with sexual nature of allegation and other evidence, supported inference of Title IX discrimination); *see also Doe v. Oberlin College*, 2020 WL 3495298 No. 19-3342, at *6 (6th Cir. June 29, 2020) (holding that the erroneous disciplinary finding itself can be strong evidence of Title IX discrimination). In light of these facts and cases, the cases cited in the defendant's memorandum, and the factual allegations of the cases set forth below in Section II, it is clear that "respondents are, as a group, mistreated on the basis of sex under current standards." Pls. Mot., ECF No. 19 at 18. .

---

[14] Turchik, *Sexual victimization among male college students: Assault severity, sexual functioning, and health risk behaviors.* Psychology of Men and Masculinity (2012).
[15] French, Tilghman, and Malebranche, *Sexual coercion context and psychological correlates among diverse males.* Psychology of Men and Masculinity (2014).
[16] *See, e.g., infra* Harris & Johnson, note 47; Taylor, note 49; North, note 51.

Therefore, the Regulations, at least as they regulate the discriminatory disciplinary processes on campus, are within the Department of Education's jurisdiction.

II.     **The Balance of Equities and Public Interest Require that the Court Deny Plaintiff's Motion Because *All* Students Benefit from the Regulations.**

   a.   **Title IX Protects the Rights of All Accused Students—Male and Female.**

Equal protection under the law is a bedrock principle of American jurisprudence. The Equal Protection Clauses of the Fifth and Fourteenth Amendments likewise ensure "the equal protection of the laws." U.S. Const. Amend. V, XIV. Title IX of the Education Amendments of 1972 similarly prohibits discrimination on the basis of sex under any federally funded educational program or activity. 20 USC 1681 *et seq.* The law proclaims a broad prohibition on discrimination on the basis of sex:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

*Id.*

The Department of Education Office for Civil Rights (OCR) is responsible for the enforcement of Title IX.[17] In 1975, OCR published 34 CFR 106, the implementing regulation of Title IX. Nothing in the text of this lengthy regulation states or implies the rule was designed to preferentially benefit the members of only one sex. Indeed, by its very terms ("no person") it is gender neutral.

---

[17] U.S. Dep't of Educ. Office of Civil Rights, *Title IX and Sex Discrimination* (Apr. 2015), https://www2.ed.gov/about/offices/list/ocr/docs/tix_dis.html.

OCR has also issued numerous guidance on sexual harassment and sexual violence including (1) Sexual Harassment Guidance, 1997[18]; (2) Revised Sexual Harassment Guidance, 2001[19]; (3) Dear Colleague Letter on Sexual Violence, 2011[20] (subsequently withdrawn in 2017)[21]; and (4); Questions and Answers on Title IX and Sexual Violence, 2014[22] (subsequently withdrawn in 2017).[23]

Neither the Title IX statute itself nor any of the guidance indicate that Title IX was intended to benefit the members of a single sex or only victims of sexual harassment, as plaintiffs and supporting *amici* seemingly suggest. Indeed, OCR has investigated and resolved numerous complaints on behalf of male students, both at secondary and post-secondary institutions:

*Secondary Education*

- Dayton Regional STEM School, Dayton, OH (2016)[24] (sexual harassment)
- Jonesboro Community Consolidated School District 43, Jonesboro, IL[25] (2015) (sexual harassment)
- Kern High School District, Bakersfield, CA[26] (2016) (sexual harassment and disparate treatment)
- Muscogee County School District, Columbus, GA[27] (2013) (sexual and disability-based harassment)

---

[18] 62 Fed. Reg. 12,034 (Mar. 13, 1997)
https://www2.ed.gov/about/offices/list/ocr/docs/sexhar01.html.
[19] U.S. Dep't of Educ., Office for Civil Rights, *Revised Sexual Harassment Guidance; Harassment of Students by School Employees, Other Students, or Third Parties* (2001).
[20] U.S. Department of Educ., *Dear Colleague Letter*, (Apr. 4, 2011),
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.
[21] U.S. Department of Educ., *Dear Colleague Letter*, (Apr. 4, 2011),
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.
[22] U.S. Dep't of Educ. Office of Civil Rights, *Questions and Answers on Title IX and Sexual Violence*,
https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.
[23] U.S. Dep't of Educ. Office of Civil Rights, *Dear Colleague Letter*, (Sept. 22, 2017),
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.
[24] Resolution Agreement, Dayton Regional STEM School, OCR No. 15-14-1205,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/15141205-b.pdf.
[25] Resolution Agreement, Jonesboro Cmty. Consolidated School District 43, No. 05-15-1033,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/05151033-b.pdf.
[26] Resolution Agreement, Kern High School District, OCR No. 09-14-1339,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/09141338-b.pdf.
[27] Resolution Agreement, Muscogee Cnty School District, OCR No. 04-13-1162,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/04131162-b.pdf.

- Pasco County District School Board, Land O'Lakes, FL[28] (2017) (disparate treatment)
- Sandwich Community Unit School District #430[29] (2015) (sexual and disability-based harassment)
- Yonkers Public Schools, Yonkers, NY[30] (2016) (harassment)

*Colleges and Universities*

- Carthage College, Kenosha, WI[31] (2015) (failure to respond to complaints of sexual harassment against two male students)
- Clemson University, Clemson, SC[32] (2019) (sex-specific programs)
- Grand Valley State University, Grand Rapids, MI[33] (2020) (sex-specific programs)
- Jefferson Community and Technical College, Louisville, KY[34] (2015) (disparate treatment)
- Lyon College, Batesville, AR[35] (2012) (sexual harassment)
- Seattle University, Seattle, WA[36] (2015) (sex-specific programs)
- Shepherd University, Shepherdstown, WV[37] (2014) (sex discrimination)
- Southern Methodist University[38] (2014) (sexual harassment and hostile environment against three male students)

---

[28] Resolution Agreement, Pasco Cnty School District, FL, OCR No. 04-12-1251, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/04121251-b.pdf.
[29] Resolution Agreement, Sandwich Cmty. Unit School District 430, OCR No. 05-15-1051, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/05151051-b.pdf.
[30] Resolution Agreement, Yonkers Public Schools, OCR No. 02-16-1243, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/02161243-b.pdf.
[31] Resolution Agreement, Carthage College, Nos. 05-15-2053 & 0515-2086, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/05152053-b.pdf
[32] U.S. Dep't of Educ., Office of Civil Rights, Dismissal Letter, OCR No. 11-19-2081 (Aug. 14, 2019), http://www.saveservices.org/wp-content/uploads/OCR-LETTER-CLEMSON-U-8.14.2019.pdf.
[33] Resolution Agreement, Grand Valley State University, OCR No. 15-19-2052 (Feb. 2, 2020), http://www.saveservices.org/wp-content/uploads/Grand-Valley-State-University-15-19-2052-Resolution-Agreement-SIGNED.pdf.
[34] Resolution Agreement, Jefferson Cmty. & Technical College, OCR No. 03142384 (Feb. 20, 2015), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03142384-b.pdf
[35] Resolution Agreement, Lyon College, OCR No. 06-12-2184, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06122184-b.pdf.
[36] Resolution Agreement, Seattle University, OCR Nos. 10152145, 10152146, 10152147, 10152148, (Nov. 19, 2015), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/10152145-b.pdf.
[37] U.S. Dep't of Educ., Office of Civil Rights, No. 03-14-2241, (Sept. 29, 2014), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03142241-a.pdf.
[38] Resolution Agreement, Southern Methodist University, OCR No. 06112126, 06132081, 06132088, (Nov. 16, 2014), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06112126-b.pdf.

- Temple University, PA[39] (2014) (athletics)
- Tulane University, New Orleans, LA[40] (2018) (sex-specific programs)
- University of Central Arkansas[41] (2020) (sex-specific programs)
- Wesley College, Dover, DE[42] (2016) (due process)

OCR has also long been concerned with due process for the accused and has viewed

adjudications of sexual harassment complaints as within their jurisdiction:

*2001 Guidance*[43]

- In a section called "Due Process Rights for the Accused," OCR stated that the procedures for adjudicating campus complaints must ensure not only the Title IX rights of the complainant, but also "accord due process to all parties involved." *Id.* at 20.
- OCR stated that schools must provide notice to the accused student and allow both parties to present witnesses and evidence. *Id.*
- OCR stated that schools must undertake an impartial and prompt investigation and adjudication of each claim. *Id.*

*2011 Dear Colleague Letter*[44]

- Even in the notorious "Dear Colleague Letter" (now withdrawn),[45] OCR interpreted Title IX as requiring schools to provide both accusers and accused "the equal opportunity to present relevant witnesses and other evidence." *Id.* at 11.

---

[39] U.S. Dep't of Educ., Office for Civil Rights, No. 03142257, (Nov. 4, 2014),
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03142257-a.pdf.
[40] Resolution Agreement, Tulane University, OCR No. 06-18-2230,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06182230-b.pdf
[41] Resolution Agreement, University of Central Arkansas, OCR No. 07-19-2134, (Mar. 4, 2020),
http://www.saveservices.org/wp-content/uploads/07192134-UCA-Agreement-1.pdf.
[42] Resolution Agreement, Wesley College, No. 03-15-2329,
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/03152329-a.pdf
[43] U.S. Dep't of Educ. Office of Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, (Jan. 2001),
https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf.
[44] U.S. Department of Educ., *Dear Colleague Letter*, (Apr. 4, 2011),
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.
[45] This Guidance document has been heavily criticized as curtailing due process on campus by several groups including a group of Harvard Law professors. *See* Elizabeth Bartholet, Nancy Gertner, Janet Halley, and Jeannie Suk Gersen, Harvard Library Office for Scholarly Communication, *Fairness For All Students Under Title IX*,
https://dash.harvard.edu/bitstream/handle/1/33789434/Fairness%20for%20All%20Students.pdf?

- OCR interpreted Title IX as requiring "prompt and equitable" adjudications of complaints on campus. *Id.* at 8.
- OCR stated that that schools should "provide an appeals process" and allow the accused to present his side of the story. *Id.* at 11-12.

*2014 Question and Answer Guidance*[46]

- OCR required that a school's Title IX adjudication process be "adequate, reliable, impartial, and prompt and include the opportunity for both parties to present witnesses and other evidence. *Id.* at 25.

Despite the above, plaintiffs and their *amici* seek to cast the Regulations as an unprecedented regulation of school adjudications. In order to support this argument, they focus almost entirely on the perspective of female victims of sexual harassment. *See* Compl., ECF No. 1, Brief as *amicus curiae* of Lawyers' Committee for Civil Rights Under Law, ECF No. 33-1. This focus misunderstands the very purpose of Title IX. OCR has long believed the regulation of disciplinary processes was within its jurisdiction because discrimination can (and does) occur within the disciplinary process. The statute is not limited to the protection of one sex or gender; it protects all.

**b. Recent Litigation Reflects Existing Discrimination in Campus Disciplinary Systems.**

On April 4, 2011, the Obama Administration's Department of Education issued the now-infamous "Dear Colleague Letter" which "pressured universities to adopt procedures that all but ensured schools would find more accused students responsible in campus sexual misconduct cases."[47] Since then, over 500 lawsuits have been filed by accused students against their universities, usually alleging breach of contract, due process deprivations, or sex discrimination in violation of

---

sequence=1. Even this document recognized that the regulation of the disciplinary process was within its jurisdiction.

[46] U.S. Dep't of Educ. Office of Civil Rights, *Questions and Answers on Title IX and Sexual Violence*, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

[47] Samantha Harris & KC Johnson, *Campus Courts in Court: The Rise in Judicial Involvement in Campus Sexual Misconduct Adjudications*, 22 N.Y.U. J. LEGIS. & PUB. POL'Y 49 (2019) (Harris & Johnson).

Title IX. *Id.* at 64-9. Over 340 of the lawsuits were filed in federal courts.[48] *Id.* Accused students in these cases are "overwhelmingly male." *Id.* at 92.[49] Of the more than 298 substantive decisions by state and federal judges, universities have been on the losing side a majority of the time. *Id.* at 65-6.

Plaintiffs totally ignore Title IX discrimination against males in their Complaint and subsequent Motion for Preliminary Injunction. This is especially astounding given that the deprivation of students' rights in the disciplinary process, evidenced in part by the explosion of Title IX lawsuits, was a substantial predicate for the issuance of the Regulations. *See, e.g.*, 85 Fed. Reg. 30048-50. The Regulations thus recognize the existing discrimination on campus and attempt to resolve such discrimination.

### c. The Regulations Specifically Seek to Resolve this Issue by Treating Male and Female Students Equitably.

In light of these concerns, the Regulations specifically seek to treat students equitably. Specifically, the Regulations state:

> Treat complainants and respondents equitably by providing remedies to a complainant where a determination of responsibility for sexual harassment has been made against the respondent, and by following a grievance process that complies with this section before the imposition of any disciplinary sanctions or other actions that are not supportive measures as defined in 34 C.F.R. § 106.30, against a respondent.

34 C.F.R. §106.45(b)(1).

This clear and unambiguous language provides a foundation for due process and equal treatment among men and women alike in the Title IX Process. This cornerstone principle, in

---

[48] A complete list of all federal and state campus due process cases compiled by Harris & Johnson can be found at Samantha Harris and KC Johnson, *Lawsuits Filed by Students Accused of Sexual Misconduct, 4/4/2011 through 5/1/2020,* https://docs.google.com/spreadsheets/d/e/2PACX-1vQNJ5mtRNzFHhValDrCcSBkafZEDuvF5z9qmYneXCi0UD2NUaffHsd5g4zlmnIhP3MINYpU RNfVwSZK/pubhtml?urp=gmail_link#]; *See also* North, *Interactive Spreadsheet, supra,* note 5.

[49] *See also* Jonathan Taylor, *Plaintiff Demographics in Accused Student Lawsuits,* TITLE IX FOR ALL (July 7, 2020), available at https://www.titleixforall.com/wp-content/uploads/2020/07/Plaintiff-Demographics-by-Race-and-Sex-Title-IX-Lawsuits-2020-7-6.pdf (showing that 97.69% of these plaintiffs are male)

conjunction with specific regulations discussed later in this brief, assists in providing students

unbiased treatment in Title IX proceedings.

    **d.  SAVE has Collected Research, Data, and Case Summaries to Demonstrate how Due Process is Compromised for Male Accused Students in Title IX Proceedings.**

    Educational institutions are required by Title IX to respond to complaints of sexual assault

and harassment which constitute Title IX discrimination, as plaintiffs explain. *See* Pls. Mot., *id.*

Universities, however, have failed to address the needs of male students in this context. Instances of

this failure are listed below, raised by lawsuits filed by male students.

    **i.  Universities have used Biased Educational Materials.**

    In *Saravanan v. Drexel Univ.*, 2017 WL 5659821 (E.D. Pa. 2017), it states "[d]uring the [sexual

assault] proceeding [on the complaint that he was sexually assaulted], Jena Perez, a university official,

asked Mr. Saravanan 'why was your penis erect then? Doesn't that mean that you enjoyed it?' when

he 'reported his rape experience to her.'" *Id.* Additionally, the plaintiff "refers [in his Complaint] to a

'deeply biased document' distributed by Drexel's Public Safety… detailing 'Drexel's pro-female and

anti-male bias' by portraying women as victims of sexual assault and men as perpetrators. The

document provides 'Advice for Women' to avoid rape while providing 'Advice for Men' to '[t]hink

about whether you really want to have sex with a woman who does not want to have sex with you.'"

*Id.* at *2.

    In *Doe v. Rollins*, No. 6:18-cv-01069, Slip Op., at 6  (M.D. Fla. March 9, 2020), the judge

noted, "[d]uring Title IX trainings for students, Rollins included statistics and charts identifying the

gender of people involved in or affected by sexual misconduct. Some of those statistics are: 1 in 5

college women will be sexually assaulted during their college years; 6.4% of college-aged men perpetrate rape; and 99% of people who rape are men." These statistics have been discredited.[50]

In *Doe v. Purdue University*, 928 F.3d at 669, the University's "Center for Advocacy, Response, and Education" posted an article titled "Alcohol isn't the cause of campus sexual assault. Men are."

In *Doe v. Grinnell College*, No. 4:17-cv-00079, Slip. Op. at 19 (S.D. Iowa July 9, 2019), the presentations in both trainings included hypothetical scenarios featuring female victims and male perpetrators.

In *Doe v. Washington & Lee*, 2015 WL 4647996, at *10 (W.D. Va. 2015), a University decisionmaker cited an article during a presentation "posit[ing] sexual assault occurs whenever a woman has consensual sex with a man and regrets it."

In *Doe v. Johnson and Wales Univ.*, No. 1:18-cv-00106, Slip. Op. at 24-25 (D.R.I. May 24, 2018), the University used training materials that suggested women on campus are vulnerable to sexual assault and that men are sexual offenders.

In *Montague v. Yale Univ.*, No. 16-cv-00885 Slip. Op. at 58-59 (D.Conn. March 29, 2019), during training, the University presented a slideshow which in part stated "[a]lmost always, [there is] a presumption of female victims, male perpetrator."

### ii.   Universities have Applied Policies in Inconsistent and Discriminatory Manners between Men and Women.

In *Jacobson v. Blaise*, 69 N.Y.S.3d 419, 425 (3rd Dep't. 2018), the "petitioner [] inquired whether the consent standard applied to both parties, and Blaise explained that the obligation applied to the person initiating the sexual activity. When petitioner asked, 'How do you define

---

[50] *See* Evan Gerstmann, *The Stat That 1 In 5 College Women Are Sexually Assaulted Doesn't Mean What You Think It Means*, Forbes (July 16, 2020),
https://www.forbes.com/sites/evangerstmann/2019/01/27/the-stat-that-1-in-5-college-women-are-sexually-assaulted-doesnt-mean-what-you-think-it-means/#6018e68e2217.

initiation?', Blaise explained 'that you initiated sexual intercourse by penetrating her.' This, too, was erroneous for the concepts of consent and initiation pertain to either verbal communication or the conduct between the participants, not simply the physical act of penetration." The court found that this erroneous application of the affirmative consent standard [to only the male students because he was the student "penetrating"] warranted a new hearing for the student, because the application of the standard violated the requirement for a "rationale of the decision." *Id.*

In *Doe v. Syracuse Univ.*, 2020 WL 871250, at *6 (N.D.N.Y. 2020), the judge noted that "[u]nder [University policy], perpetrators of sexual assault "are supposedly rational actors" who "plan, practice, and become habitual rapists and sexual predators." "Inconsistency in the alleged female victim's account thereby becomes evidence that her testimony is truthful, because of alleged trauma." Conversely, the accused's consistent story becomes "evidence that he is a premeditated and experienced sex offender."

In *Saravanan v. Drexel University*, the court noted that the plaintiff alleged that "[w]hen he provided Robert Lis, a member of Drexel's staff, with service of process documents to be served on J.K. for violation of the protection from abuse order, Mr. Lis allegedly responded: 'I don't think we do that for guys, I am pretty sure that's for girls only, but let me check that and I will get back to you.'" *Saravanan*, 2017 WL 5659821 (E.D. Pa. 2017).

### iii.    Universities have Failed to Investigate Claims of Male Sexual Assault.

Female-on-male sexual assault allegations are often ignored on college campuses, as documented in the following cases:

In *Saravanan v. Drexel University*, the University repeatedly prevented the plaintiff from filing a sexual assault complaint against his female perpetrator. *Saravanan*, 2017 WL 5659821 (E.D. Pa. 2017). The plaintiff alleged that he reported his sexual assault to Drexel by way of its employees as least seven times, and Drexel never acted on his complaint. *Id.* In one of these encounters with

Drexel employees, "Mr. Lis stated 'he was in the wrong office to file his report of sexual abuse against J.K. and thus did nothing to protect him other than send him to the Philadelphia Police, SVU.' He alleges Mr. Lis also stated, 'I have never heard of a female raping a male.'" *Id.* at *2. Further, "he claims one university official classified his rape claim as 'ludicrous' and said 'she had never heard of a woman raping a man.' During the proceeding, Jena Perez, a university official, asked Mr. Saravanan 'why was your penis erect then? Doesn't that mean that you enjoyed it?' when he 'reported his rape experience to her.'" *Id.* at *5.

In *Doe v. Virginia Polytechnic Inst. and State Univ.,* 2020 WL 1309461, at *8 (W.D. Va. 2020), the judge explained, "Doe alleged that when he attempted to bring charges against Roe, defendants did not accept his informal complaints 'even though it is both University and Title IX policy that a complaint is to be investigated no matter the form in which it is delivered.'…Doe's complaint also describes the roadblocks he encountered during his pursuit of charges against Roe while noting that [University Administrator] 'went out of her way to help Roe through the process.'" *Id.* In this case the court found that this difference in treatment was indicative of gender bias with respect to an erroneous outcome claim. *Id.*

In *Marshall v. Indiana University,* 170 F. Supp. 3d 1201 (S.D. Ind. 2016), the court held that Indiana University's refusal to investigate male student's claim of sexual assault while investigating female student's claim of sexual assault raised an inference of sex-based discrimination with respect to his selective enforcement claim.

In *Doe v. Ohio State Univ.,* 323 F. Supp. 3d 962, 971 (S.D. Ohio), "[university] initiated and disciplined Plaintiff, but not Jane Doe despite receiving information from Plaintiff that she may have also violated OSU's sexual misconduct policy."

In *Doe v. Miami University*, 882 F.3d 579, 598 (6th Cir. 2018), "Vaughn had credible information that both students had potentially violated the University's sexual misconduct policy.

Vaughn, however, chose not to pursue disciplinary action against the female student, but only against the male student… John [was] extraordinarily inebriated… Jane [was] apparently mostly sober."

In *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 412-3 (D.R.I. 2018), the court noted "[b]oth John and Jane were students at Brown. Both brought complaints of sexual assault. Both complaints of sexual assault occurred, at most, within six months of each other. Brown investigated Jane's complaint; it ignored John's complaint."

In *Jia v. Univ. of Miami*, 327 F. Supp. 3d 397, 412-3 (D.R.I. 2018), the University informed the accused male student that he could not file a counter complaint against the female accuser and instead he had to be "compassionate" towards her.

### iv.    Universities have Applied the Standard of Intoxication Differently for Males and Females.

Universities often apply different standards in determining whether male versus female students are intoxicated:

In *Doe v. Amherst College*, 238 F. Supp. 3d 195 (D. Mass. 2017), the male and female student engaged in the same sexual misconduct. The college did not investigate the male student's claim of sexual assault against a female student because he was more intoxicated than the female: "the College continued to pursue the adjudication regarding the initial complaint, but did not encourage the male student to file a formal complaint, nor did the College undertake an investigation or initiate a disciplinary proceeding of the female student." *Id.* at 218. The court found that these allegations were sufficient for the court to infer sex-based discrimination. *Id.*

In *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 137 (N.D.N.Y. 2018), the Hearing Panel concluded that both John Doe and Jane Roe were too intoxicated to meaningfully consent to sexual activity, but only John Doe was subject to discipline. Further, "although both John Doe and Jane

17

Roe had been drinking, Syracuse identified John Doe as the initiator of sexual activity, notwithstanding the comparable intoxication of both participants" (citing the Complaint). *Id.*

In *Doe v. Univ. of the Sciences*, 961 F.3d 203, 210 (3rd Cir. 2020), the court noted "[a]lthough both [he] and [Roe] had been drinking [during the party], [the university] identified [Doe] as the initiator of sexual activity, notwithstanding the comparable intoxication of both participants."

In *Doe v. Univ. of Mississippi*, 361 F. Supp. 3d 597, 615 (S.D. Miss. 2019), it stated "Doe has alleged that he and Roe drank together at his fraternity party; that Roe reported to her doctor that she and Doe 'were both drunk and that she felt it was a mutual decision between both of them' to have sex; and that the University pursued disciplinary action against him but not Roe."

Each of these issues stems from a university's near-total control over the disciplinary process and repeated decisions to arbitrarily ignore male complaints of sexual assault seemingly on the basis of unlawful sex bias. Under the new Regulations, both complaining and responding students have the right to a live hearing and to cross-examine their alleged perpetrator. 34 C.F.R. § 106.45(b)(6)(i). The plaintiffs and their supporting *amici* are concerned this will chill reporting of sexual harassment. Compl., ECF No. 1, ¶ 133. But the Regulations in-fact provide greater protections and autonomy to the complainant by giving them the right to prove their cases in a live hearing with cross-examination of the respondent, instead of allowing the university to exercise total control over the adjudication. Under these Regulations, victims, including male victims, are protected from universities sweeping complaints under the rug. Therefore, the balance of equities and the public interest weigh in favor of applying the Regulations.

  **e. Federal Circuit Courts Have Increasingly Recognized the Need for Greater Due Process Protections in the Campus Disciplinary Context.**

This court has not yet ruled on whether a live hearing or cross-examination is required in the campus discipline context – thereby showing implicit support for those provisions of the

Regulations. A growing number of federal circuit courts, however, have so ruled. Generally, these courts found that due process "in the campus disciplinary process requires a live hearing and/or the opportunity for some form of cross examination when credibility determinations are made. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018); *see also*, e.g. *Doe v. Purdue Univ.*, 928 F.3d 652, 663-4 (holding that due process requires a meaningful hearing), *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 69 (1st Cir. 2019) ("due process in the university disciplinary setting requires some opportunity for real-time cross-examination, even if only through a hearing panel.") (internal quotations omitted, emphasis added); *see also Doe v. Univ. of the Sciences*, 961 F.3d 203, 213 (3rd Cir. 2020) (holding that when a university promises its student a "fair process", that process must include cross examination and a live hearing); *but see Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961) (holding that while cross examination is not required, the university must afford the accused an opportunity to "produce either oral testimony or written affidavits of witnesses in his behalf"). All of the plaintiffs in these cases are male and all of these cases concerned a lack of cross-examination or a hearing.[51] The new Regulations assist in remedying critical elements of due process deficiencies in Title IX proceedings on college campuses, as courts around the country have recognized.

---

[51] In the Interactive Spreadsheet published by SAVE, compiling 137 judicial opinions favorable to accused students, at least 29 of those are cases in which the university did not allow cross examination, at least 36 were cases in which the university used the "single investigator model" which means no hearing or cross examination; at least 34 were cases in which the university impaired the ability of the accused student to present witnesses; at least 30 were cases in which the university impaired the ability of the accused student to present evidence; and at least 23 were cases in which the university impaired the ability of the accused student to review investigative report, comprising the evidence against him. *See* North, *supra* note 5. At least 133 of the 137 of the cases in the entire spreadsheet have male plaintiffs.

III.    **Robust Due Process Protections are in the Public Interest and Weigh in Favor of Denying the Plaintiffs' Motion.**

a.  **The Regulations Assist in Restoring Due Process for Accused Students.**

The Regulations provide robust due process protections for complainants and respondents and require that both parties be treated equitably. To prevent discrimination on the basis of sex, the Regulations provide protections including, *inter alia*: (1) requiring universities to  provide written notice to the parties regarding the grievance process and notice of the allegations "including sufficient details known at the time and with sufficient time to prepare a response before any initial interview" in the case of a formal complaint; "sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting sexual harassment . . . and the date and location of the alleged incident, if known" and must supplement notice if additional allegations come to light[52]; (2) the right to cross-examine one's accuser through an advisor[53]; (3) the right to a presumption of "non-responsibility" for the accused [54]; (4) the right to present evidence/witnesses, including experts[55]; and (5) the right to a trained unbiased investigator, decision-maker, or any other person effecting an informal resolution that is free from conflict of interest or bias.[56] These basic protections will ensure students can more adequately defend themselves when accused of heinous offenses.

b.  **The Regulations Require that all Title IX Investigators are Unbiased and Undergo Training, Benefitting Both Accusers and Accused.**

The Regulations require that any coordinator, investigator, decision-maker, or any person designated to facilitate an informal resolution process be free from conflict of interest or bias and

---

[52] 34 C.F.R. § 106.45(b)(1)(i)-(ii).
[53] 34 C.F.R. § 106.45(b)(6)(i).
[54] 34 C.F.R. § 106.45(b)(1)(iv).
[55] 34 C.F.R. §106.45 (b)(5)(ii).
[56] 34 C.F.R. §106.45(b)(iii).

mandates training for those involved. 34 C.F.R. §106.45(b)(iii). According to an OCR publication, this mandate ensures that these employees are trained (1) on Title IX's definition of "sexual harassment"; (2) on the scope of the school's education program or activity; (3) on how to conduct an investigation and grievance process; (4) on how to serve impartially, including by avoiding prejudgment of the facts at issue; and (5) on how to avoid conflicts of interest and bias; (6) on any technology to be used at a live hearing; (7) on issues of relevance of questions and evidence, including when questions and evidence about a complainant's sexual predisposition or prior sexual behavior are not relevant; and (8) on issues of relevance to create an investigative report that fairly summarizes relevant evidence.[57] Further, universities must publish the materials used to train these employees, thereby ensuring transparency that will benefit accused and accuser alike. *Id.*; 34 C.F.R. §106.45(b)(10)(i)(D).

### c. The Regulations Ensure Equality in the Gathering and Presenting of Evidence.

All students benefit from knowing that if they are accused on campus. Under the new Regulations, the university retains the burden of proof and the burden of making the record. 34 C.F.R. §106.45(b)(5)(i). The Regulations also benefit all students by ensuring that both parties to a campus controversy have equal opportunity to present evidence and witnesses, including experts. 34 C.F.R. §106.45 (b)(5)(ii). Further, the Regulations prohibit the university from preventing the complainant or respondent from discussing the issue with other people. 34 C.F.R. §106.45 (b)(5)(iii). The Regulations ensure students that they will have the right to accompaniment by an advisor of their choice. 34 C.F.R. §106.45 (b)(5)(iv). Finally, the Regulations assure students that they will receive equal access to any evidence gathered as part of investigation "that is directly related to the

---

[57] *See* U.S. Dep't of Educ., *Schools Must Post Important Information Regarding Title IX on School Websites Under the New Title IX Rule*, Office of Civil Rights Blog – 20200518 (May 18, 2020), https://www2.ed.gov/about/offices/list/ocr/blog/20200518.html.

allegations...including the evidence upon which the recipient does not intend to rely." 34 C.F.R. §106.45 (b)(5)(vi).

### d. The Regulations Permit Live Hearings, Allowing Accused and Accusing Students to Take Control of Their Stories and to Advocate for Themselves.

The Regulations ensure that advisors for both the accused and accuser will have the right to cross-examine the other party, while also providing extra protections for the complainant. 34 C.F.R. §106.45(b)(6)(i), §106.45 (b)(6)(i) ("questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant" except for two specific circumstances). Further, if a party does not submit to cross-examination, the university cannot rely on that party's testimony and is prohibited from "draw[ing] an inference about the determination regarding responsibility." *Id.* Therefore, the Regulations provide the ability for both parties to advocate for themselves while prohibiting them from directly questioning each other. This protects the complainant from direct cross-examination by the respondent. 34 C.F.R. §106.45 (b)(6)(i). The Regulations further require a decisionmaker to evaluate questions for relevancy and allow the university to retain control of the hearing by establishing restrictions on an advisors participation. 34 C.F.R. §106.45 (b)(5)(iv).

In these ways the Regulations allow the university to ensure questions are not meant to demean or harass. Additionally, the Regulations require universities to provide "supportive measures to either party," including but not limited to "counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, or leaves of absence," all free of charge to students. 34 C.F.R. § 106.30(a). The Regulations also provide Rape Shield Protections for complainant and the availability of adverse inferences. 34 C.F.R. §106.45

(b)(6)(i). In other words, the Regulations strike a difficult balance that gives students autonomy through the process while also protecting them. This is in the best interest of all students.

### e.  The Regulations Provide for a More Concrete Determination of Responsibility.

The Regulations also ensure that final outcomes are reliable. First, the Regulations require that any determinations regarding responsibility be in writing and contain: standard of proof used; identification of allegations; procedural history (including methods used to gather evidence); findings of fact; application of student code to facts; and the statement of, and rationale for, the result as to each allegation. 34 C.F.R. §106.45(7)(i)-(iv). The finding is final only after written determination on appeal, or if no appeal filed, on the date on which appeal would no longer be considered timely. *Id.*

Second, the Regulations provide for a thorough appeals process. The Regulations ensure that the right of appeal is given to both parties on at least the bases of "(A) procedural irregularity that affected the outcome of the matter; (B) new evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and (C) the Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter." 34 C.F.R. §106.45(b)(8)(i)(A)-(C). Further, a university may provide additional bases for appeal for both accuser and accused. 34 C.F.R. §106.45(b)(8)(ii). The Regulations ensure that the appeal is not managed by any of the same individuals that managed the original determination, give parties equal opportunity to provide written statements to the appeals officer, and require a written decision, issued simultaneously to both parties, explaining the bases for granting or denying the appeal. 34 C.F.R. §106.45(b)(8)(iii)(A)-(F). These appellate procedures provide considerable autonomy to students that appeal or are on the receiving end of an appeal. Taken together, the Regulations ensure a concrete determination of

responsibility or non-responsibility informed by effective participation of both parties, while eliminating conflict of interest or bias on the part of the university or its employees.

**f.   The Balance of Equities and Public Interest Favors the Regulations.**

Plaintiffs argue that the public interest is served by "having governmental agencies abide by the federal laws that govern their existence." (citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), Pl.'s Mot., ECF No. 19 at 29-30. Plaintiffs fail to demonstrate, however, how the Department of Education is operating in violation of federal law. Indeed, they spend only one page discussing how these interests favor a stay or injunction and completely fail to consider the policy considerations argued above. "In deciding whether to grant an injunction, the district court must balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

Courts have acknowledged that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977). Here, the Department of Education weighed the above information, followed the requirements of the Administrative Procedure Act, and adopted the Regulations. It has faithfully adhered to its statutory mandate, particularly in working to eliminate discrimination in the disciplinary process. Further, it has adhered to the statutory mandate of Title IX in adopting these Regulations to ensure equal protection for both male and female accused students while also protecting complainants' rights. It is in the public interest to deny plaintiffs' preliminary injunction.

Similarly, balancing the equities weighs in favor of denying plaintiffs' preliminary injunction. Although courts typically consider balancing the equities of the parties involved in the litigation ("[i]n each case, a court must balance the competing claims of injury and must consider the effect on

each party of the granting or withholding of the requested relief," *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)), here, however, the Court should consider the equities of students across the country attending colleges and universities. As shown above, the Regulations provide equitable considerations for both complainants and respondents. Moreover, the Regulations provide thorough due process protections for *all* students. These protections for students tip the balancing scale in favor of denying the preliminary injunction.

## **CONCLUSION**

The Regulations are an attempt at ensuring a fair process for both complainants and accused students and have struck a balance along those lines. Because the new regulations assist in providing more robust due process protections to the accused while also protecting the accuser, they should be upheld. These matters are undoubtedly in the public interest as well as balance the equities of the accused and accuser. The Court should deny the preliminary injunction.

DATED: July 17, 2020

/s/  Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
*Pro Hac Vice* Application Forthcoming
*Counsel for SAVE*

Susan Kaplan, Ph.D., Esq.
The Kaplan Law Office
30 Wall St. 8th Floor
New York, NY 10005
Tel: (347) 683-2505
Fax: (212) 898-1231
skaplan@lawkaplan.com
*Counsel for S.A.V.E.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2020, I electronically filed the foregoing brief with the Clerk of Court by using the CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>/s/</u>  Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
*Pro Hac Vice* Application Forthcoming
*Counsel for S.A.V.E.*


Susan Kaplan, Ph.D., Esq.
The Kaplan Law Office
30 Wall St. 8th Floor
New York, NY 10005
Tel: (347) 683-2505
Fax: (212) 898-1231
skaplan@lawkaplan.com
*Counsel for S.A.V.E.*